Statement.

## Richmond.

### POINDEXTER V. MAY.

#### FEBRUARY 15, 1900.

1. STATUTES—*Local—General—Repeal of One by Another.*—The passage of
   a local statute, expressly applicable to only one county of the State,
   in no way repeals, supersedes or affects an existing general law in
   the same words as the local law, except that it is applicable to all
   the counties of the State.
2. FENCES—*Common Law Rule—Virginia Rule—"No Fence Law."*—The
   rule of the common law which requires the owner of animals to keep
   them on his own land or within enclosures is not in force in this
   State, except in those counties where the board of supervisors have
   adopted the "no fence law," as provided by section 2048 of the Code.
   The owner of animals is under no obligation to restrain them, and is
   not liable for damage done by them in consequence of straying on
   the unenclosed lands of another. Without a lawful fence the land
   owner can maintain no action for such damages. The common law
   rule is contrary to the public policy of this State as manifested by
   legislation from the earliest period until the present time.
3. CONSTITUTIONAL LAW—*Fences.*—A fence law which requires a land
   owner to enclose his land by a lawful fence, as a prerequisite to the
   right to recover for damages done by trespassing animals, violates no
   right of the land owner granted to him by the Constitution of the
   State or of the United States.
4. FENCE LAW—*Wilful Trespass—Damages.*—Although the fence law of
   this State does not require the owner of cattle to restrain them from
   passing of their own accord upon the unenclosed lands of another,
   it gives such owner no authority to drive them there, and if he does
   he is answerable for whatever damage they may do while there.

Appeal from a decree of the Circuit Court of Louisa county,
pronounced January 9, 1899, in a suit in chancery, wherein the
appellee was the complainant, and the appellant was the de-
fendant.

*Affirmed.*

The opinion states the case.

*Lyons, Campbell & Johnson,* for the appellant.

*A. K.* and *D. H. Leake* and *John G. May,* for the appellee.

HARRISON, J., delivered the opinion of the court.

The bill in this case alleges that appellee is the owner of a tract of land in Louisa county with young fruit trees, grass, and herbage growing thereon; that said land is enclosed by a fence, but not such a fence as is defined by the Code of Virginia to be a lawful fence; that appellant is in the possession and management of adjacent land, with cattle and horses thereon, and has been in the habit of turning said cattle and horses upon the lands of appellee, and still continues thus to trespass upon him, thereby injuring his fruit trees and destroying his grass and herbage; that inasmuch as appellee's fence is not such as the law prescribes as a lawful fence, appellant claims the right to turn his stock upon appellee's land, and says he will continue to do so until prohibited by some competent authority. The bill further alleges that appellant is utterly insolvent, and that unless restrained irreparable injury and mischief will result to appellee from such trespass. The prayer of the bill is that appellant may be restrained from further violation of appellee's rights.

A temporary injunction was granted restraining and enjoining appellant from allowing, permitting or suffering his cattle and horses to trespass upon appellee's premises, until the further order of the court. At the following term of the court, appellant filed his demurrer and answer, in which he admits the statements contained in the bill to be true, and insists that inasmuch as appellee's land is not enclosed by a lawful fence as defined by the Code of Virginia, his cattle and horses have a right to run thereon, and that appellee is entitled to no remedy for the injury complained of.

Upon a final hearing the Circuit Court of Louisa overruled the demurrer, and decreed that the injunction awarded, restraining and enjoining appellant from allowing, permitting or suffering his cattle and horses to trespass upon appellee's premises, be modified so as to perpetually restrain appellant from turning his horses and cattle in and upon the lands of appellee.

The appellant assigns as error (1) the action of the court in overruling the demurrer; and (2) its action in granting the injunction restraining him from turning his cattle upon appellee's land.

Under Rule IX., the appellee assigns as error the action of the court in refusing to restrain appellant from allowing, permitting or suffering his cattle to stray upon appellee's land.

The questions involved arise, alike, upon the demurrer and upon the hearing, and will be considered in the order best calculated to subserve convenience in statement.

The first contention of appellee is, "that there is no statute law in Virginia requiring the land-owner to maintain a lawful fence as defined by section 2038 of the Code, as a condition precedent to his right to recover damages for trespassing cattle, except as to the county of Accomac."

The entire fence law of Virginia, at the time of the adoption of the present Code (1887) was to be found in chapter 93 of that revision, from section 2038 to section 2061 inclusive. Section 2038 defined what should constitute a lawful fence. Since the adoption of the Code several acts have been passed, which appellee claims have had the effect of repealing section 2038, and leaving no general statute in Virginia defining what shall be deemed a lawful fence. This section seems to have had singular treatment at the hands of the Legislature, but when the several acts touching it are carefully examined we think it will clearly appear that although the section, *eo nomine,* has disappeared, still the law, in the same words, has survived the difficulties and dangers to which it has been subjected.

By act of 1889-'90 (page 945) section 2038 of the Code was re-enacted and made to apply only to Orange county. This act was repealed by act of 1893-'4 (page 948), which last-named act concludes with these words, "and section 2038 of the Code of 1887 is hereby re-enacted." The Legislature, no doubt, seeing that this mode of re-enacting section 2038 was invalid, because in conflict with article 5, section 15, of the State Constitution, which provides that when a law is re-enacted it must be published at length, passed on the same day (Acts 1893-'4, page 941) an act in these words:

" Be it enacted by the General Assembly of Virginia, that every fence five feet high, which, if the fence be on a mound shall include the mound to the bottom of the ditch, shall be deemed a lawful fence as to any of the stock named in section two thousand and forty-two of the Code of Virginia, which could not creep through the same."

The title to this act is as follows: "*An act to define what shall be a lawful fence in Virginia.*"

This act is in the words of section 2038 of the Code, which had, as we have seen, been repealed, as a general law, by the act of 1889-'90 (page 945). It, however, makes no reference to that section, and is therefore an independent general statute defining what shall be deemed a lawful fence in the State of Virginia.

By act of 1897-'8 (page 651) section 2038 of the Code is again re-enacted, but is by the express terms of the title made to apply alone to the county of Accomac. Why this act should have been passed when the act of 1893-'4, in the same words, was on the statute book and applicable to Accomac county, it is difficult to understand. While, however, it adds nothing to the fence law of Accomac county, it in no way repeals, supersedes, or affects the general law found in the Acts of 1893-'4 (page 941).

This review of these several enactments brings us to the conclusion that the general fence law of Virginia is now to be found

in chapter 93 of the Code of 1887, except section 2038, and the amendment thereof, together with the act of 1893-'4 (page 941), which is in the words of section 2038.

It is further contended that these statutes do not repeal either expressly or by implication the common law rule which requires the owners of cattle to keep them upon their own lands on pain of becoming liable in trespass for their entry upon the lands of others, and that therefore the land-owner can, as at common law, maintain his action for trespass, in case the cattle of another stray upon his land, although he may not have a lawful fence such as the statute prescribes.

From the early history of Virginia as a colony to the present time, her laws touching the subject of "enclosures and certain trespass" have been, in effect, the same. The statute of 1631 (1 Hen. 176) provides that "every man shall enclose his ground with sufficient fences upon their own peril." The act of 1632 (1 Hen. 199) reads: "Every man shall enclose his ground with sufficient fences or else to plant upon their own peril." The act of 1657 (1 Hen. 458) provides that if the land-owner does not maintain a sufficient fence, whatsoever trespass or damage he shall sustain "shall be his own loss or detriment," and provides, further, that he shall be liable for any damage to stock going upon his land, when his fence is not such as required by the statute, and that he shall be liable to double damage if the injury to such stock be wilful; and that if the land-owner shall maintain such a fence as the statute requires, that then the owner of any cattle shall be liable to make compensation for any damage or trespass committed by his cattle upon the land so enclosed. Thus the law has continued, varying somewhat in form but little in substance, until the present time. The ancient statutes from which we have quoted show what has been the policy of the law in respect to the matter of "enclosures and certain trespass" for centuries.

As already seen, the act of 1893-'4 defines what shall be

deemed a lawful fence. Section 2042 of the Code of 1887, as amended by act of 1897-'8 (page 524), provides, in effect, that where a man has a lawful fence and his lands are trespassed upon by the cattle of another, then the owner of the cattle shall be liable for damages, and also to a fine, etc.

Section 2048, as amended by act of 1895-'6 (page 466), provides that the board of supervisors of any county may declare the boundary lines of each lot or' tract of land in each county or in any magisterial district, or any selected portion thereof, to be a lawful fence, and that when this is done in the mode prescribed, section 2038, defining a lawful fence, shall be inoperative.

It is unnecessary to prolong this opinion by quoting at length from the statutes referred to, as comprising the present fence law. It is sufficient to say that the rule of the common law which requires the owner of animals to keep them on his own land or within enclosures is not in force in Virginia, being inconsistent with the legislation of the State touching the subject of "enclosures and certain trespass"; except in those counties where the boards of supervisors have acted under section 2048, as amended, and adopted what is commonly known as the "no-fence law"; the common-law rule being restored in the localities where such action has been taken.

The general law imposes on the land-owner no obligation to fence, but when land is left unenclosed the owner takes the risks of trespass thereon by the animals of others running at large, and can maintain no action for such trespass. A " lawful fence" is, necessarily, a condition precedent to the rights to recover; the statute plainly indicates this, and to hold otherwise would annul the whole law on the subject.

In the case of *Baylor* v. *B. & O. Ry.,* 9 West Va. 270, where this subject was considered, the president of the court, after showing that the law of that State was taken largely from ours, says: " On examination of the statutes of Virginia and West

Virginia, above referred to, I am of opinion that the said common-law rule, requiring the owners of cattle to keep them upon their own lands, on pain of becoming liable in trespass for their entry upon the lands of others, was not in force within the boundaries of this State, except those which are unruly and dangerous, and that if it was ever in force in Virginia, it was repealed at an early day in her history. I am not aware of any case in which it has ever been held in Virginia or West Virginia that the owner of cattle who suffered his cattle to run at large from his own lands upon the unfenced lands of others, was liable as a trespasser, in damages to other land-owners upon whose lands his cattle strolled where they were not unruly or dangerous; nor, indeed, in any case, except the land entered was enclosed by a lawful fence."

It is further contended that the "fence law" is unconstitutional because in violation of the inherent right secured to every one of "the means of acquiring and possessing property," and also because in violation of the further constitutional provision that "private property shall not be taken for public uses without just compensation."

Although the people of Virginia have been living under these "fence laws" for nearly three hundred years, and there have been several constitutions adopted since the foundation of the government, in which no reference is made to the subject, this is the first time, so far as we know, that their constitutionality has been questioned in this court.

We entertain no doubt of the validity of the laws under consideration. They were intended for the mutual benefit, convenience and welfare of all the citizens of the Commonwealth. They do not appropriate private property for public use, but simply regulate its use and enjoyment. Nor do they interfere with "the means of acquiring and possessing property." There is nothing in the statutes in question which gives or pretends to give any right to any person to enter upon another's land, and

commit any trespass thereon, whether the land be fenced or not. They do not impair the rights of private property, nor in any manner interfere with the disposal thereof. They provide a reasonable protection for the rights of owners of enclosed land, and limit the right of redress for trespass to those injuries which do not result from their own non-compliance with the law. The Legislature has the power to regulate the relative rights and responsibilities of the proprietors of enclosed land, and the owners of stock that is allowed to run at large, and can, therefore, take from every man his remedy for a trespass by cattle, unless he enclose his lands with a lawful fence, without violating any right guaranteed by the Constitution of the State, or the United States.

The constitutionality of laws similar to our own has been upheld in a number of the States. *Wills* v. *Walters,* 5 Bush. 351; *Clark* v. *Stipp,* 75 Ind. 114; *Chase* v. *Chase,* 15 Nev. 259; *Bilen* v. *Paisley,* 18 Oregon, 47. See, also, *R. R. Co.* v. *Emmons,* 149 U. S. 364.

It is further contended by appellee that if the "fence law" be valid, it can only apply to the trespassing cattle of a person owning or legally occupying an adjoining close. It is a sufficient answer to this that the bill alleges, and all of its allegations are admitted by the answer, that the land is in the possession and under the management of appellant, who has in his possession and under his control on said farm the stock complained of. And the statute provides that if any cattle, etc., shall enter into any grounds enclosed by a lawful fence, the owner or manager of any such animal shall be liable, etc.

The position taken by appellant that he has a right, under the fence law, to turn his cattle in and upon his neighbor's premises, where the latter has failed to enclose his land with a lawful fence, is wholly without merit. The fence law has not repealed, or in any way impaired the full force and effect of the common-law rule with respect to wilful or malicious trespass.

The ancient maxim that no man shall take advantage of his own wrong in his prosecution or defence against another, is also in force and controlling in this connection.

While the statutes in question do not require the owner to restrain his cattle from passing of their own accord upon the unfenced lands of another, they give him no authority to drive them there, and if he does so he is answerable for whatever damage they may do while there. *Melody* v. *Reab*, 4 Mass. 471; *Delaney* v. *Errickson*, 11 Neb. 533; *Caulkins* v. *Mathews*, 5 Kan. 199.

For these reasons, the decree appealed from must be affirmed.

*Affirmed.*