## CIRCUIT COURT OF WARREN COUNTY

F. A. Schottroffe Trust

v.

William C. Trenary et al.

February 14, 1986

Case No. (Law) 7594

By JUDGE HENRY H. WHITING

In this case the plaintiff claims damages arising out of the trespass by the defendant's cattle on the land of the plaintiff in a "no fence" county. The Court is required to pass upon the sufficiency of Ground No. 4 of the grounds of defense setting forth the affirmative defenses of contributory negligence and unavoidable accident. Both parties have submitted authorities on those issues, but the Court notes that the defendant [sic] has filed no pleading testing the sufficiency of that ground of defense and makes this ruling upon the assumption that the appropriate pleading will be filed to raise that issue.

Warren County has declared the boundary lines of each tract of land as a lawful fence to cattle in Article 1, Section 4-1, of its Code, and the effect of this is to make the owner of the animals liable for their trespasses under the provisions of Virginia Code Section 55-330, which *Poindexter v. May*, 98 Va. 143, 148 (1900), says restores the common law rule "which requires the owner of animals to keep them on his own land." *Tate v. Ogg*, 170 Va. 95, 101 (1938), described the *Poindexter* holding as "that while at common law the owner of domestic animals was required, *at his own peril*, to keep them on his own land, or within enclosures, the rule has been changed in Virginia, as to certain animals, including horses and

22

cattle, by legislative action, except in those counties where a 'no fence' law had been adopted under the provisions of the Code." (Emphasis added.) *Tate* held that turkeys were animals outside of the statutory "fence" exception to the common law, making the owner absolutely liable for their trespasses, *id*. at 104, but refused to grant an injunction because the trespasses were only occasional, not willful and the damages at most were of trivial and inconsequential nature, *id*. at 107. *Minor on Real Property* (Ribble's Ed.), Section 122 at page 163, cites the common law rule, including *Poindexter v. May* as one of his authorities as:

> [I]ndependently of statute, or agreement to that effect, there exists no obligation upon the owner of land to fence it in, in order to keep out trespassing persons or cattle, there being at common law an absolute obligation upon other persons to remain on their own lands or in the highways and public places, to keep their cattle there, by means of fences or otherwise. In other words, in the case of cattle and domestic animals, the common law placed the duty upon the owner of the animals to keep them upon his own land by fences or other means, and imposed no duty upon the owner of the other land to keep them out.

The Restatement of Torts echoes this same rule in Section 504 in the following language:

> A possessor of livestock which intrude upon the land of another is liable for their intrusion and for any harm done while upon the land to its possessor or a member of his household although the possessor of the livestock exercised the utmost care to prevent them from intruding. . . . *The liability imposed by the rule stated in this section is based primarily upon possession of the straying livestock and not upon the quality of the possessor's conduct.* The fact that he has erected adequate fences does not relieve him from liability although

they are broken down by a force for which he is not responsible. Thus if otherwise adequate fences are negligently or intentionally broken down by a third person, or destroyed by a convulsion of nature, and as a result the livestock escape and enter another's land, their possessor is liable. On the other hand, he is not liable if the livestock do not stray but are driven by a third person from the place where they had been confined. Furthermore, a person upon whose land they stray may be precluded from recovery if he has wrongfully removed the possessor's fence or, having opened it for a lawful purpose, has negligently failed to restore it. (Emphasis added.)

Support for these statements has been found in a number of cases. *Johnson v. Robinson*, 162 N.W.2d 161 (Mich. App. 1968), where the fence was washed away by a flood and the owner was found liable despite the failure to show negligence on his part, quoting an earlier opinion of Mr. Justice Cooley of the Michigan Supreme Court (and the author of *Cooley on Torts*), as follows:

Thus it appears that the law holds the owner of cattle strictly liable for trespass on the lands of another. Application of strict liability to the facts in this case makes the defendant liable for any damage to plaintiff's lawn resulting from trespass by defendant's cattle. This is true regardless of the fact that defendant may have been free of negligence.

*Pusak v. Slobodnik*, Pa. Alleghany County Court (1915), sustained a finding of trespass by a defendant's bull and goat which broke "into plaintiff's close and devoured her herbage," quoting an earlier case in support:

On account of the natural and notorious propensity of horses, cattle and sheep to rove, the owner is bound at all hazard to confine them on his own land, and if they escape and do any mischief on the land, which they are naturally inclined

to commit, the owner is liable in an action of trespass, though he had no notice in fact of such propensity.

*Nelson v. Tanner*, 194 P.2d 468 (Utah 1948), reversed a lower court which had submitted the issue of contributory negligence of a property owner whose property was damaged by the defendant's trespassing pigs, reaffirming the common law rule which had been adopted in a statute which said that if "swine shall trespass or do damage upon the premises of any person. . . the party aggrieved. . . may recover damages by a civil action against the owner of the trespassing animals. . . ." The Court said the purpose of this statute was to re-establish the common law rule of liability (just as *Poindexter* and *Tate* held in Virginia), which charges the owner of the animals with the absolute duty to keep them upon his own premises. The Court recognized that there would be no liability if the plaintiff had driven the pigs onto his own land or if the plaintiff had damaged the defendant's fence in such a way that the pigs could escape because "in such case, the plaintiff would be in no position to complain." There was some evidence that the plaintiff's irrigation water may have eroded a passageway under the fence and the case was remanded for another trial, submitting that as an issue if the evidence supported it.

The rigor of the common law was brought into sharp relief in the case of *Fiene v. Robertson*, 171 N.W.2d 179 (Neb. 1969), where the Court held the owner of cattle liable for damages because of their trespass even though his adjoining property owner failed to contribute to the cost of the boundary fence as required by statute and the cattle had broken through the portion not properly fenced. The Court pointed out that while the defendant had a grievance against the plaintiff because of his failure to maintain the fence this did not justify or excuse the trespass but limited the defendant's remedy to a procedure to compel contribution under the statute.

If the property owner pleads the case in trespass, as this plaintiff has done, the strict liability rule applied, and an Ohio lower court was reversed in submitting an issue of contributory negligence where trespass was pleaded, distinguishing earlier Ohio cases where negligence

in keeping cattle confined had been pled and contributory negligence was made an issue in those cases. *Nixon v. Harris*, 238 N.E.2d 785 (Ohio 1968).

Based on these authorities it is my opinion that an act of God destroying the fence would be no defense to this defendant. Neither do I think the plaintiff's failure to discover the hole in the fence or the trespass earlier would be a defense to the plaintiff's claim for damages. The only defense that I can think of which might be asserted in Ground 4 would be that the breach in the fence was caused by some act on the part of the plaintiff. In this case it si contended that the fence was broken because a tree limb from a tree growing on the plaintiff's property fell upon the fence. Neither counsel cite any case involving this fact situation and the Court has been unable to find one in the limited time and with the limited resources it has for research. Based upon its study of the background of the rule and the cases it has read, it is of the opinion that if the tree fell by act of God[1] the plaintiff could not be barred from recovery because this was an act of God not affected by any activity on the part of either of these parties. This is not like the case of a drainage ditch artificially erected on a plaintiff's land creating the breach, as in *Tanner, supra.* I believe the policy of the law making property owners liable for the trespasses of their animals overrides any defense except some positive action on the part of a plaintiff causing the breach in the fence.[2] For this reason the Court will sustain a motion to strike the fourth ground of defense.

---

[1] If the defendant has some evidence that the plaintiff knew the tree was rotten and liable to fall, that should be specifically pled and then I will have to decide if that states a cause of action. My present tentative opinion is that it would not, but I will want to read more cases closer to that point before deciding that.

[2] The intentional opening of the gate and the negligent failure to close might be a defense on the theory that this positive act set the stage for the loss; a failure to repair is not a positive act but only a circumstance in the chain of causation.