DETERMINED IN

# THE SUPREME COURT

OF THE

# STATE OF UTAH.

(*Continued from Volume 43*)

## THOMAS v. BLYTHE.

No. 2525. Decided December 13, 1913 (137 Pac. 396).

1. ACTION—MISJOINDER. A complaint could join a cause of action for damages for willfully driving defendant's sheep on plaintiff's grazing land, and feeding the pasturage therefrom against plaintiff's protest with another cause of action, alleging special damages by plaintiff's sheep becoming infected with a contagious disease with which defendant's sheep were affected, and alleging the dates of the trespasses somewhat differently; Comp. Laws 1907, sec. 2961, permitting the union of special causes of action arising out of injuries with or without force to the person or property of another. (Page 5.)

2. PLEADING—AMBIGUITY—UNCERTAINTY. The complaint alleged that plaintiff owned certain uninclosed arid lands, and that defendant owned a large number of sheep, and that there was much grass, etc., on the land valuable for pasturing, and that defendant knew the boundaries of plaintiff's land which were well marked, and willfully and wrongfully trespassed on the land by driving a large number of sheep thereon, and maintaining camps thereon, and by such trespasses the grass and underbrush, etc., was destroyed to plaintiff's damage, and that defendant willfully permitted his sheep to remain on the land, and refused to remove them therefrom, as a result of which the vegetation was destroyed, etc. *Held*, that the complaint was not demurrable on the ground that it was ambiguous, unintelligible, and uncertain. (Page 5.)

3. ANIMALS—INJURIES BY TRESPASSING ANIMALS—UNINCLOSED LAND. One who willfully and against the owner's protest brings sheep

on uninclosed arid land for grazing is liable for resulting damages.[1]   (Page 6.)

4. PLEADING—DEMURRER—ADMISSIONS.   Material allegations in the complaint are admitted for the purposes of a general demurrer. (Page 7.)

5. ANIMALS—TRESPASS—FENCE LAWS—UNINTENTIONAL TRESPASS. Under Comp. Laws 1907, sec. 20, providing that if sheep trespass on premises, except those not inclosed by a lawful fence where required, the party aggrieved may recover damages, a sheep owner is not liable for damages resulting from an unintentional trespass on uninclosed land in a county in which the fence law is in force.   (Page 8.)

6. APPEAL AND ERROR—BILL OF EXCEPTIONS.   Exceptions to instructions and to the refusal to charge cannot be reviewed upon the court stenographer's certificate that certain exceptions were taken, if such exceptions are not contained in a bill of exceptions properly allowed; such certificate not being a part of the judgment roll.[2]   (Page 9.)

7. APPEAL AND ERROR—BILL OF EXCEPTIONS.   Appellant need only include in his bill of exceptions that part of the proceedings at trial and exceptions thereto which he desires to have reviewed. (Page 10.)

APPEAL from District Court, First District; *Hon. W. W. Maughan,* Judge.

Action by Thomas Thomas against John Blythe.

Judgment for plaintiff.   Defendant appeals.

AFFIRMED.

*Stewart, Bowman* and *Morris* for appellant.

*Edward McGurrin* and *W. E. Rydalch* for respondent.

FRICK, J.

The plaintiff, respondent in this court, brought this action against the defendant, appellant here, to recover damages for

---

[1] Buford v. Houtz, 5 Utah, 591, 18 Pac. 633; Jones v. Blythe, 33 Utah, 362, 93 Pac. 994.

[2] Snow v. Tarpey, 25 Utah, 126, 69 Pac. 718.

alleged willful trespasses by appellant's sheep on respondent's lands and for eating and destroying the herbage and grasses growing thereon. In the complaint respondent, for a first cause of action, in substance, alleged that during all of the time when the wrongs complained of were committed he was the owner and in possession of certain arid, uninclosed, and uncultivated lands located in Box Elder County, Utah, which lands he particularly described; that the appellant, during all of said time, was the owner and in possession of about 10,000 head of sheep, all of which were kept in said Box Elder County; that on respondent's lands "there are growing a large quantity of timber of the quaking asp variety, together with much underbrush; that the said land is covered with and has growing thereon native grasses of various kinds, . . . and that said land is valuable for grazing and pasturing purposes." It is then further alleged as follows:

"(4) That the defendant and his agents and servants well knew the boundaries of said land, which said boundaries were marked by well-defined marks and corners, consisting of large posts set in the ground at stated intervals, and that the same was claimed, occupied, and owned by this plaintiff. (5) That the plaintiff is the owner and has the care of a large number of sheep, which sheep require the grass from a large scope of country for their support, and the said land herein described and the grass thereon, together with other grass owned by the plaintiff, was being reserved for his said sheep during the months of August and September, and which grass so reserved was only sufficient to maintain said sheep, all of which facts the defendant well knew. (6) That at divers times, and upon each and every day between about the 1st day of July, 1911, and the 29th day of July, 1911, the defendant and his agents and servants willfully and wrongfully trespassed on and upon said land by driving thereon a large number of sheep, to wit, about 2500 head, and during all of said time maintained camps and sheep beds and herded and kept said sheep in and upon said land. (7) That by reason of the defendant's willful trespass thereon in

driving and keeping and maintaining his said sheep upon said land as herein alleged, the grass and verdure, roots,.and underbrush, have been destroyed, to the damage of this plaintiff as hereinafter alleged. . . . (9) That the defendant negligently and willfully permitted his sheep to remain and be upon said land in the same place for a great length of time, and some portions thereof have been reduced to an ash bed and all the vegetation, roots, and grasses have been completely destroyed and killed. (10) That the said sheep were on said land as herein alleged by reason of their being driven and held thereon by the defendant and his agents and servants, and were there against the protests of this plaintiff, who demanded of the defendant that he remove the same. That the said defendant refused to take said sheep therefrom, and was prepared to and would resist any attempt on the part of the plaintiff to remove them therefrom, and did declare that they should depasture said land and the whole thereof."

Then follows a statement of the amount of damages. The allegations in the second cause of action are substantially the same as in the first, except that different lands are described and that the alleged wrongs were committed "between about the 1st day of April, 1911, and the 29th day of July, 1911," and that the respondent suffered damages because a large number of appellant's sheep were affected with an infectious and contagious disease whereby respondent's lands had become infected, whereas in the first cause of action the wrongs complained of are alleged to have occurred "between about the 1st day of July, 1911, and the 29th day of July, 1911," and upon different lands. Nothing is said about the disease in the first cause of action. There was also a third cause of action, in which respondent sought to quiet the title to all of said lands in himself, but this cause of action was eliminated from the complaint after appellant had interposed a demurrer to it, and therefore needs no further consideration. After the complaint had been amended by eliminating therefrom the third cause of action, appellant again, both generally and specifically, demurred to it. The special demurrer was based

upon the grounds that the two causes of action remaining in the complaint were improperly joined, and that the complaint was ambiguous, etc. The court overruled both demurrers, and the appellant filed an answer to the complaint in which he, in substance, denied the wrongs set forth in the complaint. A trial to a jury resulted in a verdict and judgment in favor of respondent, and the appellant appeals upon the judgment roll without a bill of exceptions.

The overruling of that ground of the special demurrer relating to the joining of the two causes of action is assigned as error. Comp. Laws, 1907, section 2961, so far as material here, provides:

"The plaintiff may unite in the same complaint several causes of action, legal or equitable, or both, where they all arise out of: . . . Injuries, with or without force, to person and property, or either."

Here we have a plain, unambiguous statement of what causes of action may be joined in one complaint. Can any one successfully contend that the injuries set forth in the foregoing complaint do not squarely come within that portion of the section we have quoted above? We think not. We think the statute is so clear that neither argument nor authorities can be required to show that the two causes of action were properly joined in the complaint. In giving the right to join different causes of action our statute differs from those of some of the other states. We are clearly of the opinion that upon the ground that two causes of action were improperly joined the trial court committed no error in overruling the special demurrer.

Nor do we think the court erred in holding that the complaint was not vulnerable to a special demurrer upon the ground that it was ambiguous, unintelligible, and uncertain. True it is that there are portions of the complaint that are inartifically drawn and the language is not as clear and precise as it could have been. Yet, taking the complaint as a whole, it is no more faulty in that regard than, in the nature of things, pleadings of that character frequently are. It would be quite as impracticable to at-

tempt as it is impossible to force attorneys into preparing what may be called perfect pleadings. While no doubt the ordinary rules of pleading should be enforced, yet courts could easily create much more harm than they could prevent by insisting upon too strict a rule with respect to the precision of statement that should be used in pleadings. In that regard it is safe to say that we had "rather bear those ills we have than flee to those we know not of." We remark that the complaint already contained some statements of evidentiary facts; and what counsel's criticism really amounts to, if it were allowed, is that the respondent should be required to plead still further evidentiary facts. The complaint was sufficiently clear and specific to advise appellant of the wrongs he was charged with and of the relief demanded, and we cannot see how he could have been prejudiced in any way by the overruling of the latter ground of his special demurrer.

This brings us to the general demurrer. Counsel for appellant strenuously insist that this case comes within the rule laid down in the case of *Buford v. Houtz*, 5 Utah, 591, 18 Pac. 633, affirmed in 133 U. S. 320, 10 Sup. Ct. 305, 33 L. Ed. 618. In that case it was in effect held that the uninclosed uncultivated lands of the West, which practically form a part of the public domain although owned by private owners, are nevertheless not governed by the same rules respecting trespasses committed on them by cattle or other animals going thereon and eating the grasses and herbage therefrom as are the inclosed or cultivated lands. It is held that merely to permit cattle to graze on uninclosed and uncultivated lands does not constitute a trespass upon real estate as that term was generally understood and applied at common law or some general statute. In view of that decision counsel contend that their client had a right to turn his sheep out on the public domain, and that if they went upon respondent's uninclosed and uncultivated lands to eat the grasses that were growing thereon, respondent had no legal cause for complaint. While the rule laid down in the Buford Case, *supra*, has in effect been reaffirmed

by this court in a much later case, yet in the latter case the conditions under which the owner of uninclosed and uncultivated lands can recover damages for trespasses committed thereon are clearly and fully stated. See *Jones v. Blythe,* 33 Utah, 362, 93 Pac. 994. The ruling in that case is clearly reflected in the first headnote, which is as follows:

"Though under Rev. Stat. 1898, sec. 20, providing that if sheep, etc., shall trespass on the premises of any person, except where such premises are not inclosed by a lawful fence in counties in which a fence is required by law, the party aggrieved may recover damages by action or by distraining, as therein provided, an owner of sheep is not liable for damages resulting from an unintentional trespass on uninclosed lands in a county in which a fence law is in force, yet he is liable where he intentionally drives his sheep on such land."

If in the case at bar appellant's sheep, without his knowledge, had casually strayed upon respondent's lands in question, and had eaten the grasses and herbage growing thereon, then the case would come within the rule laid down in the Buford Case. According to the allegations of the complaint, however, which, for the purposes of the general demurrer, are admitted, appellant willfully and intentionally drove his sheep onto respondent's lands and kept them there against the protests of respondent, for the express purpose of having them eat the grasses and herbage growing thereon. It certainly must be conceded that under the allegations of the complaint in this case respondent could have proved the very facts which this court held were sufficient to entitle the owner of lands to recover in *Jones v. Blythe, supra.* These facts are stated in the second headnote of that case as follows:

"Evidence in an action for damages caused by sheep trespassing on premises held to show that the owner of the sheep, after being notified to keep them off the premises, willfully drove them thereon and kept them there till they had eaten and destroyed much of the grass."

In our opinion the allegations of the complaint bring this case squarely within the rule laid down in the last case referred to.

Respondent's counsel, however, contend that the demurrer was properly overruled because appellant's sheep were trespassing by merely going onto respondent's lands in question, and that such was the case although appellant did not know such to be the fact, and did not know the boundaries of respondent's lands. In other words, they contend that the same rule applies to the lands in question that would apply to cultivated farm lands in this state as provided in Comp. Laws 1907, section 20, to which reference is made in *Jones v. Blythe, supra.* We have already pointed out that this court is committed to a contrary doctrine. Section 20 aforesaid should be given a reasonable construction and application, and we are still of the opinion that the construction and application given it in *Jones v. Blythe, supra,* is both just and practical. To hold that the Legislature intended the provisions of section 20 to have any application to the arid uninclosed and uncultivated lands of this state is tantamount to holding that the Legislature intended to pass unjust and oppressive laws. There are, perhaps, no less than 50,000 to 75,000 square miles of arid uninclosed and uncultivated lands in this state, most of which is still held by the general government, and on which animals have, from time immemorial, gone at will for the purpose of eating the small amount of grass and herbage growing thereon. Respondent's lands come within the vast area of arid lands aforesaid, and the mere fact that he may be the owner of the lands described in the complaint ·does not change their character in the least degree. Nor does that fact, standing alone, give him any special rights as against animals that are not intentionally driven or kept thereon against his will. It is only when animals are driven onto or kept on his lands against his consent that he has any legal cause for complaint. It is his protest or refusal to consent that makes the owner of such animals a wrongdoer and liable for damages. The rights and duties aforesaid arise out of the nature of things in this arid country. However, when one is warned to keep his animals off certain lands which are owned by another, and which are pointed out by the latter to the former, the former cannot

complain if he is held liable for the damages he may cause to such other by intentionally having his animals eat and destroy the grass and herbage growing upon such land. It would be cause for complaint, however, if it were held that he must keep his animals off arid uninclosed and uncultivated lands at his peril the moment such lands passed into private ownership. Such a rule, under the conditions prevailing in this state, would be unreasonable and oppressive. For the reasons, therefore, that under the allegations of the complaint the appellant was charged with willfully and intentionally driving and keeping his sheep on respondent's lands in question against the latter's will and consent, the general demurrer was properly overruled.

Appellant also contends that the district court committed numerous errors in its charge to the jury, and in refusing appellant's request to charge. As already stated, this appeal is upon the judgment roll without a bill of exceptions. Appellant asks us to review his exceptions to the charge and to the refusals to charge as requested upon the certificate of the court's stenographer who certifies that certain exceptions were taken to the instructions given by the court, and also to the refusal of the court to give certain requests offered by appellant, which certificate is included in the judgment roll. Such a certificate cannot legally be made a part of the judgment roll. Exceptions to instructions given or to the refusal of requests, like all other exceptions which are not preserved by force of the statute, must, in order to be available for review in this court, be served on the adverse party, and settled and allowed as a bill of exceptions, and certified by the trial judge within the time and in the manner provided by the statute. The court's stenographer cannot settle a bill of exceptions. The precise question here presented was passed on by this court in Snow v. Tarpey, 25 Utah, 126, 69 Pac. 718, where it was held that exceptions inserted in the judgment roll, as was done in this case, cannot be considered by this court on appeal. While it is true that both the instructions given by the court and the requests offered by the parties, if filed, are a part of the judgment roll, yet this

is not true of the exceptions to either. The exceptions must be settled and allowed by the trial judge as before stated. For the reason that such was not done in this case, we cannot review the exceptions to the instructions, nor those to the refusal of the requests.

By what we have said we do not mean to convey the idea that, in order to have a bill of exceptions settled and allowed, a party is required to include in it all or any particular part of the evidence given or proceedings had at the trial. All that he is required to do is to include such exceptions, and the evidence bearing thereon, if any, as he desires this court to review, whether few or many, and prepare, serve, and have his bill allowed and certified within the time and in the manner provided by our statute.

While from a mere cursory examination of some of the instructions we are impressed that the district judge misconceived and misstated the law, yet we are powerless to correct the errors for the reasons before stated.

It follows, therefore, that the judgment should be, and it accordingly is, affirmed, with costs to respondent.

McCARTY, C. J., and STRAUP, J., concur.