# WINTERS v. TURNER.

No. 4697.   Decided January 4, 1929.   (278 P. 816.)
Rehearing Denied June 24, 1929.

*Knox Patterson,* of Moab, and *H. L. Pratt,* of Price, for appellant.

*B. W. Dalton, Henry Ruggeri,* and *F. W. Keller,* all of Price, for respondent.

CHERRY, J.

From a judgment upon a verdict in favor of the plaintiff and against defendant for damages for the trespass of defendant's cattle upon the plaintiff's lands, and from a decree enjoining future trespasses, defendant appeals.

There are numerous grounds upon which the judgment is assailed, the principal one being that under the facts in the case there is no legal liability on the part of the defendant for the trespass complained of.

The scene of the controversy may be generally designated as townships 17 and 18 south, range 21 east, in Grand county. This is an area of land six miles east and west by 12 miles north and south. Most of it is unimproved and uninclosed public lands of the United States suitable only for grazing purposes, and upon which all persons equally have an implied license to graze animals. The plaintiff was the owner, as purchaser or lessee, of numerous disconnected tracts of land interspersed throughout the two townships mentioned aggregating a total area of approximately 3,000 acres. These particular tracts of land had previously been granted by the federal government to the state of Utah and by the latter granted to the plaintiff. The plaintiff's lands are so situated with reference to the public lands that access can be had to the latter without going upon or over the former.

The defendant was engaged in the business of cattle raising. He owned extensive tracts of cultivated land situated some 20 miles distant and below the area in question. It was his habit, at the beginning of the summer season, to

turn about 1,500 head of cattle loose at his own lands knowing and expecting that from the situation and character of the country and the habits of cattle they would drift and range towards the upper country and would graze upon the areas in question, including the lands of the plaintiff. The defendant had knowledge of the plaintiff's ownership of the lands referred to and had been notified not to permit his cattle to trespass thereon.

The damages claimed by the plaintiff were for the trespass of defendant's cattle upon his lands during the summer seasons of the years 1925 and 1926. The evidence without conflict showed the intrusion of defendant's cattle upon the plaintiff's lands during the times mentioned and under the circumstances described.

It is contended that the plaintiff cannot recover damages under the circumstances shown because the acts complained of do not amount to a trespass. In other words, that one who turns his animals loose upon the public domain where he has the legal privilege to graze them is not thereby subjected to liability for damages if such animals intrude and graze upon adjoining and uninclosed private lands. The basis for the doctrine contended for is found in the leading case of *Buford* v. *Houtz*, 133 U. S. 320, 10, S. Ct. 305. 33 L. Ed. 618. This action, which arose in the territory of Utah, involved the question of whether an injunction should be issued in favor of the owners of alternate and odd-numbered sections of a vast tract of uninclosed and uncultivated lands restraining the defendants from permitting their animals to graze thereon, when the remaining even-numbered sections of the tract were public lands of the United States upon which the defendants as well as all other persons had the implied license to graze domestic animals.

It was obvious from the situation that the plaintiff, by the relief sought, would exclude defendants not only from the use of plaintiff's lands but from the use of any of the intervening and surrounding public lands, and obtain for

himself a monopoly of the whole. It was thus apparent that the plaintiff's claim was lacking in equity. Another factor in the case was whether the common-law rule, that an owner of cattle was bound to restrain them or else be liable for their trespass on the uninclosed grounds of others, prevailed in Utah. The court, after an extended argument, arrived at the conclusion that such rule did not then prevail in Utah. The essence of the argument was that in the progress and settlement of the general region of the northwest, the custom and habit of the people had been to make common use of the public domain for pasturing domestic animals with the implied consent of the national government; that the common-law principle was ill adapted to the nature and condition of the country at that time; that nearly all of the states in early days had what was called a fence law requiring cultivated grounds to be fenced in a prescribed manner; and that if lands were not so fenced there was no liability on the part of the owner of cattle if they invaded such lands, etc. It was stated that the territory of Utah had a similar statute. It was stated in the opinion that "otherwise the right of the owner of all domestic animals, to permit them to run at large without responsibility for their getting upon the lands of his neighbor, was conceded." With this conclusion respecting the rule relating to the right to permit animals to run at large, the court, upon the ground that the plaintiff's claim lacked equity, affirmed the decree of the lower court in denying the injunction.

*Buford* v. *Houtz*, supra, was decided February 3, 1890. Thereafter numerous cases arose in the federal and state courts involving a variety of questions concerning the rights and liabilities of the owners of live stock with respect to their trespassing upon the lands of others. As the cases are claimed to relate to and bear upon the question in hand, we will briefly notice them.

*Lazarus* v. *Phelps*, 152 U. S. 81, 14 S. Ct. 477, 38 L. Ed. 363, arose in Texas and decided that notwithstanding a

fence law or statute of the state changing the common-law rule, which statute had been construed to the effect that "since the fence law of 1840 the owner of uninclosed land has no right of action for the intrusion of stock upon it," an owner of cattle who deliberately and intentionally and by affirmative acts availed himself of the pasturage on the plaintiff's uninclosed lands is liable therefor.

In *Light* v. *U. S.*, 220 U. S. 523, 31 S. Ct. 485, 55 L. Ed. 570, the federal government sued for and obtained an injunction enjoining defendant from pasturing his cattle on the uninclosed Holy Cross Forest Reserve in Colorado upon showing that the defendant, with the expectation and intention that they would do so, turned his cattle out at a time and place which made it certain that they would leave the open public lands and go at once to the reserve, where there was good water and fine pasturage. The defendant asserted a statute of Colorado providing that a land owner could not recover damages for trespass by animals unless the property was inclosed with a fence of designated size and material. The court said:

"Fence laws do not authorize wanton and wilful trespass, nor do they afford immunity to those who, in disregard of property rights, turn loose their cattle under circumstances showing that they were intended to graze upon the lands of another."

The decree was affirmed.

In *Shannon* v. *U. S.* (C. C. A.) 160 F. 870, it was held that:

"Where defendant drove large bands of cattle into a 320-acre pasture which was inclosed on three sides, but open on the side toward a public forest reserve, knowing that there was no water in the pasture, and that it was insufficient to sustain the cattle and that they must, of necessity, drift onto the reserve for pasture and water, defendant could not claim freedom from responsibility for the cattle trespassing on the reserve because he at no time drove them there, and because the reserve was not inclosed."

The case arose in Montana, where a statute in substance declared that cattle might run at large and all owners who

neglect to fence their lands should be without remedy against the owners of animals which might trespass thereon. The court held that the statutes of Montana had no application to the public lands of the United States, and a decree enjoining the defendant from driving, or causing or permitting to be driven, his live stock upon the forest reserve and permitting the same to remain there, was affirmed.

In *Western Wyoming L. & L. S. Co.* v. *Bagley*, 279 F. 632, decided by the Circuit Court of Appeals of the Eighth Circuit, the essential facts were much the same as in the case at bar. The plaintiff, who was the owner of alternate and odd-numbered sections in a large uninclosed area in Wyoming (the even-numbered sections being public domain), sued for an injunction and damages for trespass against defendant who had turned cattle into the area and kept them there. The state law in Wyoming was settled to the effect that "no trespass is committed when animals lawfully running at large wander upon and depasture the uninclosed lands of a private owner. It was conceded that unless the trespass was willful and deliberate the plaintiff could not recover, and upon the facts it was held that a case of willful and deliberate trespass was not made and a judgment for the defendant was affirmed.

In *Martin* v. *Platte Valley Sheep Co.*, 12 Wyo. 432, 76 P. 571, 78 P. 1093, the plaintiff owned numerous disconnected tracts of land surrounded by public lands of equal area all in one inclosure. The plaintiff had a decree in the trial court enjoining defendants from driving, holding, herding, or feeding their cattle upon plaintiff's lands and "from in any manner trespassing thereon." On error to the Supreme Court it was held that:

"In this state cattle are permitted to run at large, and the principle in force here is that no actionable trespass is committed when domestic animals lawfully running at large wander upon and depasture the uninclosed lands of a private owner."

The evidence was held sufficient to show a willful and intentional trespass. The distinction between a willful and intentional trespass and an unintentional trespass on uninclosed lands by wandering animals is pointed out with the conclusion that the former is actionable notwithstanding the settled policy of the state permitting animals to run at large, while the latter is not. The decree was modified so as to enjoin only the willful and intentional trespasses of defendants.

The holdings of other cases cited may be grouped as follows:

Where by statute or the settled law of the state animals are permitted to run at large, one who turns his cattle out to graze unrestrained on lands where he has a right to turn them is not liable for trespass if they wander or enter upon the uninclosed premises of another. *Richards* v. *Sanderson,* 39 Colo. 270, 89 P. 769, 121 Am. St. Rep. 167; *Williamson* v. *Fleming,* 65 Colo. 528, 178 P. 11; *Hill* v. *Winkler,* 21 N. M. 5, 151 P. 1014; *Jastro* v. *Francis,* 24 N. M. 127, 172 P. 1139.

An owner of domestic animals who willfully and intentionally drives, herds, or causes them to go upon the uninclosed premises of another is liable for the damage done by them notwithstanding a state law which permits such animals to run at large. *Herrin* v. *Sieben,* 46 Mont. 226, 127 P. 323; *Frostenson* v. *Marshall,* 25 N. M. 215, 180 P. 287; *Kendrick* v. *Healy,* 27 Wyo. 123, 192 P. 601.

The cases above referred to are in harmony and agreement upon the two propositions last above stated. The only conflict may be found in a disagreement as to what facts constitute a willful and intentional trespass. It is significant and important to here observe that in every one of the cases reviewed the decision rested upon a statute or settled state policy which permitted animals to run at large, and exempted the owners thereof from liability for the unintentional trespass of such animals on the uninclosed premises of others.

We now come to the decisions of our own court upon the subject. Shortly after the decision of *Buford* v. *Houtz, supra,* was made, the Legislature of the Territory of Utah enacted chapter 55, Laws of the Territory of Utah 1890, which contained the following provisions:

"Sec. 1. That any county or precinct thereof may at any general or special election called for that purpose by the county court, by a vote of not less than two-thirds of the tax-payers voting at such elections declare in favor of fencing their farms and allowing their animals to run at large, in such cases the provisions of this act authorizing the detention and sale of animals for damages shall be inoperative."

"Sec. 4. If any neat cattle, horses, mules, sheep, goats or hogs, shall trespass or do damage upon the premises of any person except in cases where said premises are not enclosed by a lawful fence in districts or places where a fence is required by law, the party aggrieved may recover damages by an action at law against the owner of the trespassing animals or by proceeding as provided in this act."

These provisions, in substance, have since continued in force in this state, and in a slightly variant form are now found in Comp. Laws Utah 1917, §§ 56, 58.

*Jones* v. *Blythe,* 33 Utah 362, 93 P. 994, involved trespasses committed in 1905 and 1906 in Box Elder county. A "fence law" had been previously adopted in the county. The case was tried and decided upon the theory that the trespasses complained of were willful and intentional. The court in deciding the case quoted with approval the following excerpt from 2 Cyc. 398:

"The owner of cattle who willfully turns them onto land of another without his consent is liable, without regard to the question of fences."

It was pointed out that under the statutes there was no liability for the involuntary or inadvertent intrusion of animals upon the premises of another in counties where a fence is required, but that in such case an owner of land may recover for a willful and malicious trespass such as

the evidence showed had been committed in that case. On account of the situation of the plaintiff's lands with reference to the public domain, the doctrine of *Buford* v. *Houtz,* supra, was held inapplicable.

*Thomas* v. *Blythe,* 44 Utah 1, 137 P. 396, was an action for trespass upon uninclosed uncultivated lands of plaintiff in Box Elder county by defendant's sheep. It was alleged that the trespass was willful and wrongful, and consisted of defendant driving, herding, and keeping his sheep on the plaintiff's lands against the plaintiff's protest. On defendant's appeal from a judgment against him, which only presented on the main question the sufficiency of the plaintiff's complaint, this court held that the plaintiff's complaint was sufficient to state a cause of action for a willful and intentional trespass under the rule laid down in *Jones* v. *Blythe,* supra. In answering further contentions of the parties, the court made observations to the effect that the provisions of the statute (then Comp. Laws Utah 1907, § 20, now Comp. Laws Utah 1917, § 58) would be limited in its application to cultivated farm lands, and that the doctrine enunciated in *Buford* v. *Houtz,* supra, concerning trespassing animals, would control where the lands involved where arid, uninclosed, and uncultivated. It was further stated that the court was committed to this doctrine because of its previous decision in *Jones* v. *Blythe.* This was a manifest error. The court entirely overlooked the fact that *Jones* v. *Blythe,* supra, dealt with a locality where a fence law had been adopted and where animals were permitted by express law to run at large.

Then followed the cases of *Mower* v. *Olsen,* 49 Utah 373, 164 P. 482, and *Hall* v. *Bartholomew,* 51 Utah 279, 169 P. 943. In each of these cases a recovery for trespass upon uninclosed and uncultivated lands in a county where no fence was required was affirmed upon the ground that the trespass had been willful and intentional. Mention is made in both cases of the doctrine suggested in *Thomas* v. *Blythe,* supra, concerning the application of the statute, Comp.

Laws Utah 1907, § 20. Both cases, however, were decided, as above stated, upon the theory that a willful and intentional trespass resulted in liability without regard to the question of fences. In the latter case it was held in effect that, if the defendant had been notified to keep his cattle off the plaintiff's lands and by reasonable investigation could have ascertained the boundaries of the plaintiff's lands, he was liable if he thereafter suffered or permitted his cattle to trespass thereon.

The Utah cases are in general harmony with the other precedents on the subject, with the exception that the statefent made in *Thomas* v. *Blythe,* supra, concerning the construction and application of the Utah statute is not supported by any precedent or authority.

The doctrine that the owner of domestic animals may permit the same to run at large without incurring liability for their trespassing upon the uninclosed lands of another is contrary to the common-law rule, and had its origin in express statutory law or in a settled policy confirmed by judicial decisions. This is clearly recognized in *Buford* v. *Houtz,* supra. Immediately after the decision of *Buford* v. *Houtz,* supra, the Legislature of the Territory of Utah enacted a statute (chapter 55, Terr. Laws of Utah 1890) which prescribed the particular manner by which certain localities might adopt fence laws and permit animals to run at large, and expressly declared that: "If any neat cattle, horses, mules, sheep, goats or hogs, shall trespass or do damage upon the premises of any person except in cases where said premises are not inclosed by a lawful fence in districts * * * where a fence is required by law, the party aggrieved may recover damages by an action at law against the owner of the trespassing animals," etc. The plain purpose of the legislative act was to adopt the common-law rule of liability against the owners of trespassing animals, but permit such localities as might desire a different rule to adopt the same by the manner prescribed.

The case of *Buford* v. *Houtz,* supra, did not involve the question of legal liability of the owners of animals for trespass. That question arose indirectly, and it was determined solely upon the ground that the nature and condition of the country, the customs and habits of the people, and the statutes of the territory in force at that time rendered the common-law principle of liability inapplicable at that time and resulted in the right of the owner of all domestic animals to permit them to run at large without responsibility for their getting upon the uninclosed lands of his neighbor. But when the Legislature, in the exercise of its undoubted power to control the matter, adopted a different rule of liability, the basis for the doctrine of *Buford* v. *Houtz,* supra, was gone, and the rule of liability changed.

Concerning the tendency to revive the common-law doctrine of liability, it is said in 1 R. C. L. 1105:

"Since the earlier decisions, which in many states abrogate the common-law rule respecting the liability of the owner for his trespassing animals on the ground of its inapplicability to then existing conditions, there has occurred, with the rapid development of the various commonwealths by increase of population and extension of agriculture, such a marked change in the physical and social conditions and habits of the people that the reasons for the rejection of the common-law rule have disappeared and instead a necessity for its adoption has clearly arisen. As a result many states have, by legislative enactments prohibiting cattle owners from permitting their animals to roam at large, and by making owners responsible for any damages resulting from their failure to restrain their cattle, practically restored to its full strength and power the old common-law principle. In other jurisdictions, by statute, particular localities or political subdivisions, as counties, are invested with authority to reinstate the common-law rule when desired by the voters. Under modern conditions the tendency to revert to the common-law rule of liability may be said to be general."

Instances of legislative changes in this connection are recognized in numerous cases. *N. P. Ry. Co.* v. *Cunningham* (C. C.) 89 F. 594; *Bulpit* v. *Matthews,* 145 Ill. 345, 34

N. E. 525, 22 L. R. A. 55; *Marsh* v. *Koons,* 78 Ohio St. 68, 84 N. E. 599, 16 L. R. A. (N. S.) 647, 125 Am. St. Rep. 688, 14 Ann. Cas. 621; *Missouri Pac. R. Co.* v. *Olden,* 72 Kan. 110, 83 P. 25.

Of the propriety and power of the Legislature to determine the policy of the territory respecting the liability of owners of trespassing animals there can be no doubt. The enactment of the statute in 1890 was a plain exercise of that power. Nor can we see any sufficient reason for limiting the application of the statute by judicial construction. The act is not open to construction. The time of its enactment with relation to the decision in *Buford* v. *Houtz,* supra, and its own terms and language, leave no uncertainty as to its purpose and intent. The conclusion is unavoidable that the act of the Legislature established a rule of liability against the owners of trespassing animals of general application limited only by the express exceptions contained in the act itself. We therefore think that the statement made in *Thomas* v. *Blythe,* supra, to the effect that the statutory provision should be limited in its application to cultivated farm lands, was erroneous and not necessary to the decision of the case before the court, and we must decline to follow it. The statute itself affords a convenient manner by which any locality may adopt a fence law and permit animals to run at large, in which case the owner's liability for the trespass of such animals is modified, but where no such policy is adopted, the general provision of the statute prescribing liability against the owners of trespassing animals must be given effect.

In the case at bar no claim is made that a "fence law" had been adopted or was in force in Grand county at the time of the trespass in question. We therefore arrive at the conclusion that the intrusion of the defendant's cattle upon the plaintiff's lands subjected the defendant to liability for the damages sustained under the general provisions of Comp. Laws Utah 1917, § 58.

The trial of the action for the purpose of determining

the plaintiff's right to damages was had before a jury. When the evidence was all in the court instructed the jury that under the uncontradicted evidence the plaintiff was entitled to recover, and submitted to them the ■ question only of the amount of damages. In the instruction the court stated that the evidence showed without conflict that during the times mentioned "the plaintiff was the owner or lawfully in possession of the lands described in the complaint." The court had previously read the complaint to the jury wherein the lands claimed by plaintiff were described by legal subdivisions, sections, township, and range, the total acreage of which, when computed, would amount to 4,080 acres. The complaint, however, did not state the acreage. Included in the description of lands were sections 32 and 36, township 17 south, range 21 east. A general exception was taken to the instruction. Appellant's counsel now say: "A careful checking up of the evidence in the case, including the exhibits, fails to show any evidence whatever that the plaintiff was the owner of, or entitled to the possession, of, these sections." Counsel for respondent point out that when the plaintiff's title and right to the lands in question were proved, the particular lands were marked on a map "Exhibit B," and this map was introduced in evidence and submitted to the jury as illustrating the lands of the plaintiff which had been trespassed upon. The two sections above mentioned were not indicated on this map. It is therefore contended by respondent that no harm resulted to defendant from the erroneous inclusion of the two sections in the descriptions contained in the complaint. Under the circumstances, we are of the opinion that the general exception to the charge is not sufficient to present the objection now made. If the attention of the court had been called to the particular matter at the time, the error would no doubt have been corrected. In view of the insufficient exception and the ·further fact that the extent of plaintiff's lands were correctly shown by the map which was exhibited to the jury

for the purpose, the appellant cannot now be heard to complain of the matter.

The action was commenced in Grand county and tried there before a jury. Upon application of both parties a new trial was granted. Thereupon the plaintiff made a motion to change the place of trial to some other county upon the grounds that he could not have a fair and impartial trial in Grand county on account of the prejudice of the general public against him. A large number of affidavits were presented in favor of the motion, and a large number of counter affidavits were filed by the defendant controverting the plaintiff's alleged grounds for his motion. In addition, oral evidence was produced. The court granted the motion and the action was transferred to San Juan county where it was tried. Appellant complains of the order changing the place of trial, and asserts that it was an arbitrary and unwarranted exercise of authority. It is not claimed that the grounds asserted and the proof produced by the plaintiff were not sufficient in law to authorize the change. It is merely argued that upon the whole of the evidence the court should have denied the motion. That is a matter which this court will not review. An application for a change of the place of trial is addressed to the sound discretion of the trial court, and its action will not be disturbed except for an abuse of discretion; *State* v. *Certain Intoxicating Liquors,* 53 Utah 171, 177 P. 235. While a strong showing was made against the change, there were ample facts shown by the plaintiff to authorize it. The court was called upon to determine a disputed question of fact, and in disposing of the matter we are satisfied that he acted within the limits of his discretion, and committed no error in changing the place of trial.

In addition to the judgment in favor of the plaintiff for damages for the trespasses sued for, a decree was made and entered upon findings made by the court enjoining the defendant from permitting his cattle

to trespass upon the plaintiff's lands or to eat up and destroy the feed and verdure growing therein, etc.

It is contended by appellant that even though the plaintiff is entitled to recover damages at law for the trespass complained of, the injunction is improper and should not be issued. It is a common practice where there have been repeated trespasses to issue injunctions to restrain threatened trespasses on real property to avoid a multiplicity of actions. But injunction is a purely equitable remedy and ought not to be issued except in aid of equity. The situation of the parties in the case under review is such that the effect of the injunction is to reach further than the protection of the plaintiff's lands. As before seen, the plaintiff's lands are uninclosed and disconnected tracts scattered through a much larger area of public lands. The defendant, in common with the plaintiff and other persons, has the legal privilege to pasture and graze his animals upon these public lands. If the defendant is enjoined from trespassing upon the lands of the plaintiff upon pain of fine or imprisonment for contempt of court, he is practically excluded from making any use of the public lands adjoining and surrounding the plaintiff's lands, and the result is that the plaintiff has the exclusive use not only of his own lands, but of a much larger area of public lands. This is an advantage to which the plaintiff is not entitled and to which a court of equity ought not to lend its aid. There is no claim or proof here that the defendant is insolvent or unable to respond in damages, no contention that the plaintiff's damages are incapable of ready computation. The case for the injunction stands alone upon the plaintiff's title to his property and the threatened trespass by the defendant. In view of the peculiar situation and the necessary result of the injunction in its effect upon the parties with respect to their use of the public lands, we think, in equity, the injunction should not have issued. The comparative convenience or inconvenience of the parties from granting or withholding an injunction

sought should be considered, and none should be granted if it would operate oppressively or inequitably or contrary to the real justice of the case. 14 R. C. L. 358. See also *Crescent Min. Co.* v. *Silver King Min. Co.*, 17 Utah 444, 54 P. 244, 70 Am. St. Rep. 810; *Barker* v. *Mintz,* 73 Colo. 262, 215 P. 534.

Appellant complains of the costs adjudged against him. The plaintiff, at the appropriate time, filed his verified memorandum of costs and necessary disbursements wherein claim was made for costs and disbursements amounting to $435.60, computed according to the fees prescribed by law in ordinary civil cases. Defendant objected to the amount of costs claimed and moved to have the same taxed by the court. The court, after a hearing, taxed the costs in the same amount as claimed by the plaintiff. It is contended that the court erred in thus allowing costs according to the full amount of fees prescribed by law in ordinary cases in view of Comp. Laws Utah 1917, § 58, which provides:

"If any neat cattle, horses, asses, mules, sheep, goats or swine shall trespass or do damage upon the premises of any person, except in cases where such premises are not enclosed by a lawful fence in counties where a fence is required by law, the party aggrieved, whether he be the owner or the occupant of such premises, may recover damages by an action at law against the owner of the trespassing animals, or by distraining and impounding said animals in the manner provided herein; provided, that in cases where an action is brought for the recovery of such damages, none of the animals trespassing shall be exempt from execution, and the fees in such cases shall be but one-half the fees in other civil cases."

The answer of repondent to this claim is that the action was not only for damages but also for equitable relief by injunction, and the case therefore was not within the statute relied upon, and the costs in the full amount were properly allowed as incident to the granting of the equitable relief. This would be a valid answer if the injunction had been properly granted. But we have determined that the in-

*junction* was erroneously issued. That leaves the plaintiff's judgment standing as one at law for the recovery of damages, the recovery being authorized by the statute quoted. In such case the provision of the statute limiting the fees to one-half the fees in other civil cases must be applied. *Smith* v. *Valentine*, 23 Utah 539, 66 P. 295. It follows that the court, in taxing the plaintiff's costs, erred by refusing to compute the same according to one-half the amount of fees provided for in other civil cases.

Other alleged errors assigned and submitted by appellant have been considered, but we deem them of no substantial consequence, and hence dismiss them without special mention.

It is ordered that the judgment and decree appealed from be modified by reducing the costs allowed to the plaintiff from $435.60 to $217.80, and that the injunction against defendant be dissolved. The judgment for damages in favor of the plaintiff, together with costs amounting to $217.80, is affirmed. The appellant is awarded one-half his costs of this appeal to be recovered from respondent.

THURMAN, C. J., and HANSEN and GIDEON, JJ., concur.

STRAUP, J. (dissenting). The lands in question are in the mountains in the vicinity of East Willow, Little Creek, and She Canyon, in Grand county. They are useful only for grazing purposes. Grand county is one of the few counties of the state where there still are public grazing ranges. The area in question covers about four townships. All originally, and still largely, of the public domain. The defendant, for years, was, and still is, engaged in the cattle business, grazing and feeding them on the public range or public domain. In about 1922 the government withdrew from settlement or purchase 15 or 20 40-acre tracts of land along and in the vicinity of East Willow and Little Creek as and for public watering places. Such withdrawals were

scattered over two or more townships. Thereafter, and between 1922 and 1926, the plaintiff, by purchase or lease, acquired tracts of land, mostly 40-acre tracts, aggregating about 3,400 acres, scattered along or in the vicinity of streams and the public watering places, and scattered over several townships and bordering on and surrounded by the public domain. His lands were uncultivated, unfenced, and uninclosed, and were used either by himself or leased to others for grazing purposes, especially for grazing sheep, which were herded and ranged all over the public domain. The situation was such, and as stated by the trial court, that if the defendant was required to restrain his cattle and keep them off the lands of the plaintiff, so scattered here and there over the public range, it would mean:

"That he will have to herd his cattle like a man now herds his sheep or else not permit them to go on the public range, because the evidence shows if they go upon the range they do of their own accord, unless restrained in some manner, feed all over this whole territory."

And, as is shown by the evidence, and recognized by the courts (*Western Wyoming L. & L. Co.* v. *Bagley* (C. C. A.) 279 F. 632) :

"It is the disposition of cattle to roam, and when turned loose upon the range a herd of cattle will in a short time be scattered for miles over the surrounding country. It is within the power of a sheep-herder to hold a band of sheep upon any particular section of land and depasture it. But this is not practicable with cattle. The most that can be done with a herd of cattle is to hold them within a relatively large area by range riders, driving those back which leave or attempt to leave the range."

There is no evidence to show that the defendant willfully drove or herded, or pastured, his cattle on the lands of the plaintiff, or that he turned them out on the public range with the intention that they should feed or pasture on plaintiff's lands. The evidence is he turned them out on the public domain to there feed and pasture. It further shows that he knew or was told the location of some of plaintiff's

lands; was warned or notified to keep his cattle off such lands; that some of them strayed or wandered and fed on some of such lands, the defendant claiming that if he herded and pastured his cattle on the public domain the plaintiff's lands being uninclosed and in small tracts scattered over several townships, and some of them in such close proximity to the public watering places, it was impracticable if not impossible to feed or pasture his cattle on the public domain without some of them straying or wandering and feeding on some of the lands of the plaintiff. But, as presently will be seen, such does not constitute a wanton, willful, or intentional trespass.

. The situation here is analogous to that in the case of *Buford* v. *Houtz*, 133 U. S. 320, 10 S. Ct. 305, 33 L. Ed. 618, decided in 1890, on an appeal from a judgment of the Supreme Court of the Territory of Utah. The syllabus in the case reflects the decision. It is:

"As there is a recognized public right of pasturage on the public domain which is left open, defendants cannot be enjoined from exercising such rights by persons who own parcels of land detached and scattered through a large body of the public domain, and lying open, though thereby defendants' cattle will trespass on complainants' land."
"The common-law of England, that every man must restrain his stock within his own grounds, is not applicable to the sparsely-settled portions of the west."

In the course of the opinion it is said:

"The whole system of the control of the public lands of the United States, as it has been conducted by the government under acts of congress, shows a liberality in regard to their use which has been uniform and remarkable. * * * All the people who had cattle that they wished to graze upon the public lands, permitted them to run at large over the whole region, fattening upon the public lands of the United States and upon the uninclosed lands of the private individual without let or hindrance. * * * It has never been understood that in those regions and in this country, in the progress of its settlement, the principle prevailed that a man was bound to keep his cattle confined within his own grounds, or else would be liable

for their trespasses upon the uninclosed grounds of his neighbors. Such a principle was ill adapted to the nature and condition of the country at that time."

In conclusion the court further observed:

"Upon the whole, we see no equity in the relief sought by the appellants in this case, which undertakes to deprive the defendants of this recognized right to permit their cattle to run at large over the lands of the United States and feed upon the grasses found in them, while, under pretense of owning a small proportion of the land which is the subject of controversy, they themselves obtain the monopoly of this valuable privilege."

Upon such ground and for such reasons the injunction was there denied. The denial, however, was not based merely on the ground of lack of equity or that the matters were not of equitable cognizance, or that there was an adequate remedy at law, but "on the contrary, the court went to the root of the principles governing the rights of the parties." *Mackay,* v. *Uinta Development Co.* (C. C. A.) 219 F. 116, 120. Thus, while the court denied the injunction for lack of equity, yet such result was reached from a consideration of "the principles governing the rights of the parties."

Following that decision are cases to the effect that regardless of fence laws one may become liable for a wanton or willful trespass upon lands of another, but not for cattle or animals turned loose on the public domain and wandering or straying on uncultivated and uninclosed lands of another bordering on or surrounded by the public domain. Cases both federal and state are numerous to that effect.

In 1890 the Legislature of the Territory of Utah adopted the present fence law (Comp. Laws Utah 1917, §§ 56, 58), referred to in the prevailing opinion. The meaning or intention of that act is what chiefly divides us. By the prevailing opinion the view is taken that by such act the common law of England with all its rigor was adopted, and hence in counties where there is no declaration in favor of

fencing "farms," and allowing animals to run at large as provided by section 56, one is required to restrain and keep his cattle or other animals on his own ground, and if he does not do so he becomes liable for injury done by their trespass, whether the trespass be willful or intentional or otherwise. I think such a holding is contrary to the prior decisions of this court rendered since the adoption of the statute and wherein it was construed and applied. In *Jones* v. *Blythe,* 33 Utah 362, it was held that under the statute an owner of sheep is not liable in damages resulting from an unintentional trespass on uninclosed lands in a county in which the fence law was in force, yet is liable where he intentionally drives his sheep on such lands. In *Thomas* v. *Blythe,* 44 Utah 1, 137 P. 396, it was said that in the case of *Buford* v. *Houtz,* supra:

"It was in effect held that the uninclosed uncultivated lands of the west, which practically form a part of the public domain although owned by private owners, are nevertheless not goverend by the same rules respecting trespasses committed on them by cattle or other animals going thereon and eating the grasses and herbage therefrom as are the inclosed or cultivated lands."

The court further said that counsel for respondent

"contend that the same rule applies to the lands in question that would apply to cultivated farm lands in this state as provided in Comp. Laws 1907, Section 20 [which in the 1917 compilation is Section 58] to which reference is made in Jones v. Blythe, supra. We have already pointed out that this court is committed to a contrary doctrine. Section 20 aforesaid should be given a reasonable construction and application, and we are still of the opinion that the construction and application given it in Jones v. Blythe, supra, is both just and practical. To hold that the Legislature intended the provisions of section 20 to have any application to the arid uninclosed and uncultivated lands of this state is tantamount to holding that the Legislature intended to pass unjust and oppressive laws. There are, perhaps, no less than 50,000 to 75,000 square miles of arid uninclosed and uncultivated lands in this state, most of which is still held by the general government, and on which animals have, from time immemorial, gone at will for the purpose of eating the small amount of grass and herbage growing thereon. Respondent's lands come

within the vast area of arid lands aforesaid, and the mere fact that he may be the owner of the lands described in the complaint does not change their character in the least degree."

The court thus construed the statute to be applicable only to farms or cultivated lands, but not to lands of such character as here in question; and to mean that an owner of animals is not liable for an unintentional trespass on such uninclosed and uncultivated lands, and is liable only for a willful or intentional trespass on them.

In *Mower* v. *Olsen,* 49 Utah 373, 164 P. 482, this court, again having the statute under consideration, after referring to and approvingly quoting from *Jones* v. *Blythe,* supra, and *Thomas* v. *Blythe,* supra, said:

"It will be seen from the foregoing cases, all cited in the defendants' brief, that this court construes the statute to mean, and now stands committed to the doctrine, that where a party knowingly, deliberately and intentionally drives or permits his animals to go upon the lands of another, against his will and regardless of his protests, for the purpose of deriving the benefit of his pasturage, it becomes such a trespass as the law will require him to answer for in damages."

In *Hall* v. *Bartholomew,* 51 Utah 279, 169 P. 943, the court again considered the statute, and after quoting it, said:

"It is admitted in the record that there is no ordinance of Sanpete County requiring the owner or occupant of land to inclose the same with a fence, and that no action has ever been taken by the county commissioners of that county designating what would be a lawful fence. Said section 20 has been construed by this court in three former opinions, and it would be of no avail to discuss or add to the construction placed upon it by said decisions," citing Jones v. Blythe, supra, Thomas v. Blythe, supra, and Mower v. Olsen, supra.

The court further there stated that the construction by this court was to the effect that under the statute an owner of uninclosed pasture land located on the public range in this state, especially when surrounded by vast tracts of un-

improved public domain, may not recover damages for animals trespassing upon such lands unless the trespass is intentional or willful.

I see good reason for the holding in the case of *Thomas v. Blythe,* supra, and approved by the subsequent cases, that the statute is inapplicable to uninclosed uncultivated or unimproved privately owned lands bordering on and surrounded by vast tracts of grazing lands of the public domain, and is applicable only to farm or cultivated or improved lands, and that an owner who turns his animals out to graze on the public domain is not liable if they stray or wander on uncultivated or uninclosed privately owned wild grazing lands and of a character similar to that surrounded by the public domain, but is liable only for a willful and an intentional trespass. I think the bench and bar alike consider such to be the settled doctrine in this state. I see no good reason to now depart from it, especially in view of the conditions and circumstances before us where if the defendant, when he turns his cattle on the public domain, is required to keep them from straying or wandering on the uninclosed lands of the plaintiff bordering on and surrounded by the public domain, he as well as all others, except the plaintiff, is deprived from feeding or pasturing cattle on the public domain, for it is the disposition of cattle to roam and scatter when turned loose, and it is impractical to herd and confine them as sheep may be herded and confined.

Nor do counsel for the plaintiff contend for any such doctrine as now announced by the prevailing opinion. In their brief they seek to defend the judgment on the theory that the trespass was willful and intentional. After referring to excerpts from the record which they claim support their contention in such particular, they say:

"The defendant contends that the trespass by his cattle was unintentional and caused by the mere straying of cattle upon the lands of the plaintiff, as distinguished from a wilful trespass. The authorities, however, show and hold that under a state of facts such

as exists in this case the same was a wilful trespass such as will permit a recovery. The law upon such trespasses is that a wilful trespass may be committed by the owner of animals without driving them upon the lands of the complaining party. It is committed if the owner turns his cattle loose upon other lands knowing that they will necessarily enter the lands of injured party and intends that they should do so."

To support that they cite and rely on the cases heretofore referred to from this jurisdiction and cases from other jurisdictions.

But, on the record, I do not agree with counsel that this was a willful or intentional trespass. As bearing on the question these propositions are established by the record. The defendant turned his cattle on the public domain or public range to there feed and pasture, and not with the intention that they should feed or pasture on other lands. He knew the location of some of plaintiff's lands and was warned and notified to keep his cattle off such lands. He, by turning his cattle on the public range, knew that some of them naturally were likely to stray or wander on uninclosed lands of the plaintiff, especially those acquired by him near or in the vicinity of the reserved public watering places, as well as on other uninclosed lands of the plaintiff acquired by him and scattered over the public range and bordering on and surrounded by the public domain. Such are the chief factors pointed to by respondent from which the conslusion is deduced that the trespass was willful or intentional. They, in my judgment, do not show a willful or intentional trespass.

In the case of *Martin* v. *Platte Valley Sheep Co.*, 12 Wyo. 432, 76 P. 571, as bearing on the question, the Wyoming court said:

"But it is argued, since the defendants knew that their cattle would naturally wander upon the premises of plaintiff if they allowed them to graze unrestrained upon the neighboring public land, their action in turning them at large upon the public land was tantamount to driving them upon plaintiff's premises. This argument

ignores the very distinction under the rule between the case where cattle at large wander upon uninclosed premises and where their owner wilfully drives them thereon, and practically removes the only reason for the rule prevalent here and in so many jurisdictions in this country. Every person knows that his cattle and horses permitted to run at large are liable to roam upon and depasture uninclosed premises. One who turns cattle upon his own uninclosed ground, to graze at will, must know that they will probably wander upon the adjoining uninclosed premises of his neighbor, if there be such; and yet that fact has not been deemed sufficient to constitute him a wilful trespasser. It is in just such cases, under the doctrine prevalent here, that the owner of the animals has been held not liable for the injury caused by them."

In *Richards* v. *Sanders*, 39 Colo. 270, 89 P. 769, 121 Am. St. Rep. 167, it is also said:

"One who turns his cattle out to graze unrestrained on lands where he has a right to turn them, knowing that they will probably wander on the uninclosed premises of another, is under no obligation to prevent them entering upon such premises, and, if they do so enter, he is not responsible for the damages occasioned thereby."

To the same effect is the case of *Western Wyoming Land & Live Stock Co.* v. *Bagley* (C. C. A.) 279 F. 632, and other cases there cited. The decisions of this court are in line with such views.

I therefore think the judgment should be reversed, and the case remanded for a new trial.