## NELSON v. TANNER.

No. 7125. Decided June 15, 1948. (194 P. 2d 468.)

See 3 C. J. S. Animals, Sec. 185. What constitutes wilful trespass by stock on land not inclosed by legal fence, see note, 158 A. L. R. 375. See, also, 2 Am. Jur. 773.

*J. C. Halbersleben,* of Provo, for appellant.

*George S. Ballif,* Dist. Atty., of Provo, for respondent.

WOLFE, Justice.

Appeal by the plaintiff from a verdict and judgment of no cause of action in a suit by plaintiff against defendant for trespass to plaintiff's land by pigs owned by defendant. The parties are referred to as they appeared in the court below. The facts, insofar as material here, are as follows:

Plaintiff owned, and had owned for many years prior to the commencement of this action, a tract of farm land near Payson, Utah. Defendant had occupied an adjacent tract of land during the same period of time. During the years from 1943 to 1946, inclusive, defendant had kept a few pigs, generally not more than eighteen or twenty at a time, but there was evidence that at one time, he had had as many as thirty-two.

There was abundant evidence that during the years 1943 to 1946, during which years the alleged trespasses occurred, defendant's pigs frequently came upon plaintiff's lands and damaged his crops and "rooted" his land. Defendant testified that he had never known of his pigs to be on plaintiff's lands during the years in question, but he did not, and in the nature of things, could not testify positively that his pigs had never been on plaintiff's lands.

The two tracts of land were separated by a joint fence, which defendant contended was generally hog-tight. Plaintiff's evidence tended to show that defendant's pigs rooted under the fence, and thus gained access to plaintiff's land. Defendant admitted that from time to time there had been holes under the fence, but he testified that they were made, not by the rooting of his pigs, but by the erosive action of

the water coursing through plaintiff's irrigation ditch, which ran alongside the fence. He further testified that such holes had been closed by driving stakes or securing pieces of sheet tin across the aperture.

Plaintiff commenced this action against defendant for the alleged trepass of defendant's animals, praying for damages, for an injunction, and for general equitable relief. We are not concerned with the equitable phases of the case on this appeal, and for purposes of this opinion, the case may be viewed as a purely legal action for damages. The case was tried to a jury and was submitted to the jury on the general issue. The jury returned a verdict of no cause of action, and judgment thereon was entered. From that judgment plaintiff prosecutes this appeal.

All of the assignments of error go to the correctness of the court's instructions to the jury. Plaintiff excepted to the whole of instructions number 3 and 4. Both of those instructions were at least partially correct, and therefore the assignments of error must be held to ■ be without merit. It it well settled in this jurisdiction that if a part of an instruction is correct, and a part erroneous an exception to the whole of the instruction is not well taken. The party taking the exception must specifically except to that part of the instruction which he deems erroneous. If he assigns as error the whole of the instruction, his assignment will be held not well taken if any part of the instruction is good.

By instructions number 6 and 7, the court charged the jury that it was the duty of every person having ■ the possession or control of pigs

"to use reasonable care and diligence to see to it that such pigs do not escape their enclosures, or enter upon do damage to the land of others,"

but if such person                    .

"at all times uses reasonable care and diligence to prevent their pigs' escape or entry upon lands of another, but that regardless of such reasonable care and diligence upon the part of the person charged

with such care and control, such pigs do escape and enter upon the lands of another, the person so charged with their care and control is not liable to the person in possession of such lands  *  *  *"

The court clearly misconceived the nature of the duty and liability of the owner of pigs, and incorrectly instructed the jury.

Section 3-5-79, U. C. A. 1943, provides insofar as material here as follows:

"If any  *  *  *  swine shall trespass or do damage upon the premises of any person,  *  *  *  the party aggrieved,  *  *  * may recover damages by a civil action against the owner of the trespassing animals  *  *  *."

This statute does not lay down a rule of reasonable care on the part of owners of swine. Rather it imposes a rule of absolute liability. It is not sufficient that the owner exercise reasonable care to keep his pigs off his neighbor's premises. He is charged with the absolute duty to do so.

The statute above quoted is practically identical to Section 58, Comp. Laws Utah 1917, which was construed by this court in *Winters* v. *Turner*, 74 Utah 222, 278 P. 816. We there held that the purpose of the statute was to reestablish the common law rule of liability against the owners of trespassing animals, but to permit counties desiring a different rule to adopt the same by enacting a fence law. The common law rule is, as stated in 3 C. J. S., page 1290, Animals, § 185, that

"*  *  *  the owner of domestic animals  *  *  *  is  *  *  * under an absolute duty to keep them restrained on his own premises and is liable for their trespasses on another's land if he does not."

And as further pointed out in the same section:

"Under the above rule the liability of the owner for damages resulting from trespasses committed by his animals upon the lands of others is absolute, and depends in no degree upon the question of his negligence  *  *  *."

The establishment of the common law rule, its rejection by the western grazing states in the early years of their

development, and its subsequent reinstatement in the same states during later years, either by statute or decision, is traced in *Winters* v. *Turner,* supra. The earlier Utah decisions, as well as many from other jurisdictions and from the United States Supreme Court are there reviewed. No useful purpose could be subserved by repeating that here. The development of the law is well summarized in 2 Am. Jur. 777, Animals, Sec. 110, which reads as follows:

"Since the earlier decisions, which in many states abrogate the common-law rule respecting the liability of the owner for his trespassing animals on the ground of its inapplicability to then existing conditions, there has occurred, with the rapid development of the various commonwealths by increase of population and extension of agriculture, such a marked change in the physical and social conditions and habits of the people that the reasons for the rejection of the common-law rule have disappeared, and instead a necessity for its adoption has clearly arisen. As a result many states have, by legislative enactments prohibiting owners from permitting their cattle or other animals to roam at large, and by making owners responsible for any damages resulting from their failure to restrain their animals, practically restored to its full strength and power the old common-law principle. [Citing *Winters* v. *Turner,* supra.] * * * Under modern conditions the tendency to revert to the common-law rule of liability may be said to be general."

The doctrine of the *Winters* case was reaffirmed in *Livingston* v. *Thornley,* 74 Utah 516, 280 P. 1042, and it is now the established law of this jurisdiction.

This decision is not to be understood as holding that in every case where the domestic animals of one come upon land owned by another, that the owner of such animals is liable for trespass. Clearly, if plaintiff had driven defendant's pigs onto his own (plaintiff's) land, defendant should not be held liable. So also, if defendant had erected a hog-tight fence, and plaintiff damaged that fence in such a way that defendant's pigs could pass through it, or under or over it, in that case defendant should not be held liable. In such case, plaintiff would be in no position to complain.

The duty of the defendant was not a mere duty to exercise reasonable care and diligence to confine his pigs upon his own land, but an absolute duty to restrain his pigs from going upon the lands of others, including plaintiff. It was not sufficient that the fence would be reasonably adequate to restrain the pigs. If the pigs could in fact avoid the restraint of the fence by rooting under it, the fence was not adequate, and defendant should be held liable in damages for any damage done to plaintiff's land by his animals. On the other hand, if the fence were hog-tight, and defendant's pigs were enabled to escape its confines only by reason of the fact that plaintiff's irrigation water eroded a passageway under the fence, then defendant was not liable.

Plaintiff further complains that the court submitted to the jury the question of whether or not plaintiff consented to the intrusion upon his land of defendant's pigs and that there was no evidence in the record to justify the submission of such question to the jury. The only testimony in the record on the matter of consent is that of plaintiff himself on cross-examination, wherein he specifically and unequivocally denied that he had ever given defendant consent to pasture hogs on his (plaintiff's) land during the years in question, but that one fall prior to the years here in question he "let Mr. Tanner turn some pigs on my place." By instruction No. 9 the court charged the jury that it was

"immaterial that the plaintiff at some other time gave such consent to the defendant, unless in the giving of such consent he also consented to, or led the defendant in good faith to believe that he had consented to, his permitting his pigs to enter plaintiff's lands or to remain thereupon at and during the time complained of by the plaintiff, and since that time has not withdrawn such permission or consent, or, if he has so withdrawn his permission or consent, he has not given notice to the defendant of such withdrawal."

The instruction was unsupported by the evidence. The jury could not reasonably find from the evidence that plaintiff either expressly or impliedly consented to the trespass

upon his land of defendant's hogs during the years in question.

In instruction No. 10 the court reiterated the vice of instructions number 6 and 7 by defining reasonable care and diligence and further instructed the jury that defendant would be liable to plaintiff for damages to plaintiff's land caused by his (defendant's) failure to exercise reasonable care and diligence in caring for his pigs

"unless you also find that the plaintiff was himself negligent in failing to discharge some duty resting upon him, and such negligence proximately contributed to produce the trespass and it consequent damage * * *."

Thus it was left to the jury to conjecture that plaintiff might have had certain duties which he failed to perform. Plaintiff cannot be said to have any duty in this case, and it was error to permit the jury to speculate that he might have a duty, and that he might have breached it. Any issue as to whether plaintiff's irrigation water had eroded holes under the fence would be a matter of affirmative defense on the part of defendant, not an affirmative duty on the part of plaintiff.

Reversed and remanded for new trial. Costs to appellants.

McDONOUGH, C. J., and PRATT and WADE, JJ., concur.

LATIMER, Justice.

I concur in the result.

In doing so, I limit my concurrence to that portion of the opinion which holds the trial judge erred in charging the jury that the defendant need exercise only reasonable care to see to it that the pigs did not enter upon the lands of the plaintiff. Such a charge lowers the standards prescribed by the statute and is erroneous.

As to other matters discussed in the prevailing opinion, I express no opinion because they are unnecessary to a proper disposition of the appeal, and I have grave doubts that the other instructions were unfavorable to the appellant or that appellant can claim prejudicial error in view of the fact that no instructions were requested and only general exceptions taken to the instructions as given.