CUTWRIGHT v. UNION SAVINGS & INVESTMENT CO.

No. 1889.    Decided April 6, 1908 (94 Pac. 984).

1. FRAUDS, STATUTE OF—INTEREST IN LANDS—TRANSFER—EXECUTORY AGREEMENTS. The rule that a transfer of any interest in real property whether legal or equitable is within the statute of frauds and cannot rest in parol is applicable only to executory contracts, and has no application to an executed agreement.

2. FRAUDS, STATUTE OF—REAL ESTATE—SURRENDER OF INTEREST. A contract for the sale of land provided that if the purchaser or his assigns failed to pay the installments within thirty days after maturity then such payment and all subsequent payments should be forfeited as liquidated damages. The purchaser took possession, paid certain installments, and then notified the vendor that he had moved out, had decided to quit, would not make further payments, and surrendered the key, whereupon the vendor re-entered and refused to surrender possession or recognize any rights in the purchaser's assignee. *Held,* that the forfeiture clause included an implied provision that in case of nonpayment of the installments the purchaser's interest in the premises was forfeited, and that such surrender, though resting in parol, constituted a complete divestiture of the purchaser's interest in the premises.

3. VENDOR AND PURCHASER—ABANDONMENT. Such acts constituted a complete rescission or abandonment of the contract by the purchaser, which constituted a complete defense against an action by the purchaser's subsequent assignee for damages for the vendor's withholding of possession from him under the rule permitting equitable defense in actions at law.[1]

---

[1] Free v. Little, 31 Utah 499, 88 Pac. 407.

4. SAME—ASSIGNMENT—RATIFICATION—RECEIPT OF INSTALLMENTS. Where, after rescission and abandonment of a contract for the sale of land by the vendee, he attempted to make an assignment thereof to plaintiff, the fact that the vendor's agents by mistake and in ignorance of the facts received subsequent installments from the assignee, a return of which was tendered on being brought to the attention of the vendor's manager, did not constitute a ratification of the assignment.

APPEAL from District Court, Third District; T. D. Lewis, Judge.

Action by A. H. Cutright against the Union Savings & Investment Company. Judgment for defendant, and plaintiff appeals.

AFFIRMED.

*J. M. Thomas* for appellant.

*N. V. Jones* for respondent.

### APPELLANT'S POINTS.

Where there is an agreement in writing between the parties, the vendor and vendee, and they afterwards agree that the vendee shall be released from the agreement to buy, and the vendor to hold the property, that the original writing, agreement, or bond for deed should be destroyed, or surrendered, or a written transfer be executed to be within the statutes, but not if the writing is not surrendered or destroyed. (129 Ill. 431; 31 Main 385; 11 Cal. 363; 4 New Hamp. 191; 4 Conn. 550; 17 Kan. 575; Sugden on Vendors, p. 255; Browne on St. Frauds, 5496.)

There is a marked distinction between an option to purchase or an agreement to purchase and a sale as is this case. (Mining Co. v. Jacobson, 30 Utah 115; 118 Mich. 148; 109 N. Car. 79; 72 N. Car. 321.)

A lease may be terminated by surrender of the keys and possession, but not a bond for a deed. (29 A. & E. Enc. of Law [2 Ed.], p. 681 and cases cited.)

The law is well settled, that if a corporation holds out to the public and allows one of its subordinate agents to receive money for it, it is estopped to deny his power to make the particular contract or receive the money.     (123 N. Y. 343; 73 Am. Dec. 381; 90 Mich. 550; 23 Pac. 569; Taylor on Corp. 202, 236, 244.)

## RESPONDENT'S POINTS.

"There is no doubt but that an executory contract for the sale of land, whether written or oral, can be rescinded or waived, in equity by word of mouth, if possession be given up, or the writing destroyed, but not without something done by way of rescission or waiver." (Beggs v. Bodkin, 32 W. Va. 566; Stanley v. Purdue, 33 W. Va. 375; Urpman v. Oil Co., 53 W. Va. 511; Cunningham v. Cunningham, 46 W. Va. 4; Haugen v. Skjervheim, 13 N. Dak. 617; Staley v. Purdue, 33 W. Va. 375; Garver v. McNulty, 39 Pa. 437; Lauer v. Lee, 42 Pa. 165; Dayton v. Newman, 19 Pa. 194; Auer v. Penn. 92 Pa. 444; Raffensberger v. Cullison, 28 Pa. 426; McClure v. Jones, 121 Pa. 550; Evans v. Jacobitz, 67 Kas. 249.)

FRICK, J.

The appellant brought this action to recover damages from the respondent for wrongfully withholding from   appellant the possession and enjoyment of certain real estate of which appellant claimed to be the owner by the assignment of a contract to him by one Jenkins.   The facts are substantially as follows:   The respondent is a corporation incorporated under the laws of this state pertaining to building and loan associations, and during all of the times referred to in the proceedings in this case was engaged in the building and loan business, with its principal office in Salt Lake City.   On the 2d day of October, 1905, the respondent entered into a written contract with one Arthur Jenkins, whereby it sold and agreed to convey to said Jenkins certain improved real estate in Salt Lake City for a consideration of $2,080.   Jenkins

paid $80 on said contract at the time of its execution, and the remainder was to be paid by him as follows: $20 or more on the 25th day of October, 1905, and $20 or more on the 25th of each succeeding month thereafter for the period of five years, or until the full sum of $2,000 with eight per cent. interest, was fully paid. When the full purchase price should be paid as aforesaid, respondent agreed to convey and warrant the title to said real estate to Jenkins or his assigns. The agreement contained the following provision: "And should the said Arthur Jenkins, or his assigns, fail to pay the said amount at the expiration of the time, and in installments and for thirty days above stated, then and in that case the above-mentioned payment and all subsequent payments to be forfeited as liquidated damages by reason of his failure to make such further payment." Jenkins took possession of the real estate and lived in the house thereon with his family and continued to make the monthly payments as provided by the agreement to and including March, 1906. He made no payments after that. Early in the month of May, 1906, he went to the office of respondent and informed its manager that he had moved out and would not make any more payments on the contract. Jenkins then said to the manager that "the contract as it stood was not satisfactory, and we (himself and wife) did not feel like going ahead and paying more on the house and then probably would lose it all later." The manager tried to persuade him to keep up his payments; but he said he would not pay any more, and that he and his wife had talked it all over and had decided to quit the place and had moved out, and that he had brought up the key to the house to turn it over to the manager. The manager then told Jenkins that he was in arrears one month, and that he ought to pay $20 in addition to the payments he had made. Jenkins refused to do this, but said that the whole amount he had paid was more than enough to cover the rent for the place for the time he had lived in it. The manager then took the key to the house from Jenkins. As to what was to be done with the contract the testimony of the manager and Jenkins did not agree. The manager testified that Jenkins agreed to

bring it to the office in a day or two thereafter, while Jenkins says he does not remember of any such conversation or agreement. Jenkins, however left the property, and surrendered the key, which was accepted as aforesaid. A short time after the transactions last above stated, to wit, on the 21st day of May, 1906, the appellant went to see Mr. Jenkins about obtaining an assignment of the contract in question. Mr. Jenkins then told appellant that he (Jenkins had moved out; that he had given up the place and had delivered the key to the respondent at its office. Appellant, however, insisted that Jenkins still had the right to possession, and therefore could assign this right under the contract to appellant. Jenkins said he was willing to assign to appellant any rights Jenkins might have, but wanted it understood—and it was so understood between them—that Jenkins would not agree to place appellant in possession of the premises; that, if appellant wanted the assignment, he must take it at his own risk, or, as appellant stated it in his testimony: "I asked him if he had surrendered the contract or had made a transfer in writing of the contract or any portion of it, and he said he had not. Then I said: 'Under the conditions of that contract, you still have possession.' 'Well,' he says, 'if that is the interpretation of the contract, I have.' And he says: 'If I have possession of it under the conditions of that contract, I turn it over to you.' He didn't give me any warranty as to possession other than as he stated." With that understanding appellant took the assignment of the contract, and paid Jenkins $20 therefor. A few days after appellant had obtained the assignment of the contract he went to respondent's office and presented the contract and the assignment, together with a pass book issued to Jenkins to one of the clerks, and offered to pay the April installment due on the contract. The money was received by the clerk, and the payment receipted in the pass book. On the same day when the manager discovered what had been done he notified the attorney of respondent, who at once called up appellant, and in effect told him that the respondent would not recognize the assignment; that the property had been surrendered by Jenkins to res-

pondent, and it had accepted the surrender; and that the contract between Jenkins and respondent had been mutually rescinded or abandoned, and that appellant would not be permitted to take possession of the property. After this appellant went to the property but found respondent's agent in possession, who refused to let appellant into possession, and appellant never obtained possession thereafter. Appellant thereafter tendered his monthly payments at the office of respondent, which were refused, except that several months thereafter one of the clerks received one of the installments, but it was at once returned to appellant as soon as the error was discovered by respondent's manager. The first monthly installment, however, was not returned to appellant until after this suit was commenced, it having been overlooked for some reason by the manager of respondent. The tenders of payment made after the first one were all made by appellant after he was told that his payments would not be accepted on the contract and that the respondent would not recognize his assignment thereof. No equities are involved either way. Under substantially the foregoing facts, the trial court instructed the jury to return a verdict in favor of respondent. Judgment was duly entered, from which this appeal is prosecuted.

Appellant assigns the ruling of the court in directing a verdict as error. His contention is that the sale of the real estate to Jenkins under which he went into possession transferred to him an interest in lands which could not be surrendered by him by parol; that the transactions between Jenkins and respondent in removing from the premises and giving up the key amounted to no more than an attempt to transfer or surrender an interest in real estate by parol, which is invalid under the statute of frauds. No doubt the transfer of any interest in real property, whether equitable or legal, is within the statute of frauds; and no such interest can either be created, transferred, or surrendered by parol merely. By this is meant that no executory parol agreement with regard to such an interest will be enforced by the courts. Agreements, however, that are fully executed may stand upon a different

footing. Neither does it follow, because an interest in real property may not be transferred by parol, that a contract creating such an interest may not be abandoned or rescinded by parol if acted upon by both parties to it, and possession is surrendered in pursuance of the parol agreement to the vendor, or to some one in his behalf, by his direction. No doubt, if a parol agreement to surrender or to rescind a contract for the sale of lands is wholly executory, and nothing has been done under it, it is within the statute of frauds, and cannot be enforced any more than any other agreement concerning an interest in real property may be. But where the right of the purchaser is subject to forfeiture upon a failure or refusal to make the payments or to comply with the terms of the contract, he may, with the consent of the vendee, rescind the contract and abandon all of his rights under it; and if this be done by any acts or conduct which clearly manifest an intention to rescind or abandon the contract by both vendor and vendee, and the vendor takes possession in pursuance of the parol agreement, then the rescission is complete and binding on both parties. Moreover, where the contract itself provides for the forfeiture of the vendee's rights under the contract in case he fails to perform any of its provisions, then, if the vendor insists upon the forfeiture and repossesses himself of the premises, no writing is necessary to divest the vendee of his interest. While the forfeiture clause of the contract in question is not explicit in its terms with respect to the forfeiture, it does provide that in case Jenkins makes default in his payments then all payments made by him are "to be forfeited as liquidated damages by reason of his failure to make such further payment." If Jenkins, therefore, desired to forfeit his prior payments, all he had to do was to refuse to make further payments. If he could do this by simply refusing to pay, why could he not give up the property at the time he concluded not to pay more? This he did do, and we think that, although an express forfeiture of all of Jenkins' interest in the premises is not stipulated for in the contract, this is necessarily implied from what is said. This was also manifestly the construction placed upon the con-

tract by both Jenkins and respondent's manager at the time Jenkins moved out of the house, delivered the key, and notified respondent that he would not make any further payments.    If this conclusion be sound, then the statute of frauds is not in the case, for the reason that the contract itself provided for the divesting of Jenkins' interest in the premises in question.    But, if we are wrong in this, still, in view of the undisputed facts and circumstances as developed at the trial, we think the trial court committed no error in directing a verdict for respondent.    We think no other conclusion permissible under all the evidence than that Mr. Jenkins and respondent intended to rescind and abandon the contract; that respondent should again possess itself of the property in question discharged from all claims of Mr. Jenkins; and that he was likewise released from all claims the respondent had against him under the contract.    Further, when Jenkins removed from the property, delivered the key to the house to respondent, and respondent's manager accepted it with the intention of releasing Jenkins and to take possession of the property, and did so, the rescission and abandonment of the contract was complete, and divested Mr. Jenkins of all interest in the land.    The law upon this subject is well stated in 2 Warvelle on Vendors (2 Ed.), section 826, in the following language:

"It has been held in some of the earlier cases that an agreement to rescind is as much an agreement concerning land as the original contract, and hence should be in writing; but all the later cases, both in England and the United States, are unanimous in affirming that a contract in writing, and by law required to be in writing, may in equity be rescinded by parol, and this even though the contract may have been under seal.    Such rescission may be effected, not only by an express agreement, but by any course of conduct clearly indicating a mutual assent to the termination or abandonment of the contract.    It may consist either of words or acts, and all the circumstances attending the transaction may be shown to prove intention; but if evidenced by acts alone they must be such as leave no doubt as to such intention."

The following cases fully support the text above quoted: *Cunningham v. Cunningham,* 46 W. Va. 1, 32 S. E. 998;

*Urpman v. Lowther Oil Co.,* 53 W. Va. 512, 44 S. E. 433, 97 Am. St. Rep. 1027; *Evans v. Jacobits,* 67 Kan. 249, 72 Pac. 848; *School District v. Benson,* 31 Me. 381, 52 Am. Dec. 618; *Miller v. Pierce,* 104 N. C. 389, 10 S. E. 554; *Brownfield v. Brownfield,* 151 Pa. 565, 25 Atl. 92; *Arrington v. Porter,* 47 Ala. 714; *Maxon v. Gates,* 112 Wis. 196-201, 88 N. W. 54; *Telford v. Frost,* 76 Wis. 172-175, 44 N. W. 835; *Adams v. Fullam,* 43 Vt. 592-599; *Henderson v. Beatly,* 124 Iowa 163, 99 N. W. 716; *Mahon v. Leech,* 11 N. D. 181, 90 N. W. 807; *Wadge v. Kittleson,* 12 N. D. 452, 97 N. W. 856; *Haugen v. Skjervheim,* 13 N. D. 616, 102 N. W. 311. The statement in the quotation from War-velle above quoted, and as sometimes found in the opinions of the courts, that such a rescission or abandonment may be made in equity, can, as a matter of course, not affect a defense of that character in this state, although interposed in an action at law. In this state equitable defenses to actions at law are as availing as purely legal defenses would be. In any law action, where an equitable defense is interposed for the purpose of defeating a recovery merely, it in no way affects the form of the action or proceeding, since, under our Constitution, "law and equity can be administered in the same action." In 29 A. & E. Enc. L. (2 Ed.), 681, the law upon this subject is stated in the following language:

"A written contract for the sale of land may be abandoned by parol, or by estoppel; but the acts constituting abandonment must be positive, unequivocal, and inconsistent with the contract of sale. . . . The vendee may abandon the contract by failing or refusing to comply with its terms, and the vendor may then convey to another."

The facts in this case, as we view them, present a clear case of either a rescission or an abandonment of the contract. The vendee refused to further comply with its terms, and in pursuance of this he proposed to surrender the property to the vendor, who consented to the vendee's proposal of abandonment; and, in accordance therewith, the vendor took possession of the property, and thus became reinvested with all the rights the vendor had at the time the contract was enter-

ed into. The cases cited by counsel for appellant do not support his contention that the transaction between Jenkins and respondent was required to be evidenced by a writing. *Dougherty v. Catlett,* 129 Ill. 431, 21 N. E. 932, does not pass upon this question, nor is it decided in that case that such a contract may not be abandoned by parol. In *Carr v. Williams,* 17 Kan. 575, the agreement was merely executory, and it was held unenforceable. In *Evans v. Jacobits,* supra, the Supreme Court of Kansas held that a parol contract of abandonment is valid if executed. In *Farrar v. Farrar,* 4 N. H. 191, 17 Am. Dec. 410, and *Botsford v. Morehouse,* 4 Conn. 550, it is held that, where the title is once vested in one person by a proper deed of conveyance, it cannot be divested by merely surrendering and destroying the deed. In *Grunow v. Salter,* 118 Mich. 148, 76 N. W. 325, it is stated in the opinion that the interest a vendee obtains in land under a contract of purchase cannot be surrendered by parol. The decision, however, was not based upon this ground, and it was not a necessary element in the case. Moreover, the other Michigan cases upon which the dictum in the foregoing case is based do not so decide, nor was the proposition involved therein. In *Stephens v. Mansfield,* 11 Cal. 363, the court held that the transaction there in question did not constitute an abandonment of the contract, but constituted a sale and transfer of an interest in the land which could not be affected by parol. The case cited from 31 Me. we have also cited as holding the contrary. These are all the cases cited by counsel, and we have not found any others, although there may be such. In concluding this branch of the case we remark that in the case of *Free v. Little,* 31 Utah 499, 88 Pac. 407, we held that an executory contract with respect to the purchase and sale of land may be abandoned. While the decision was not based upon an abandonment in that case, still we recognized the doctrine; and upon a more thorough examination of the authorities we are firmly convinced that the doctrine is sound.

Counsel further contends that the respondent ratified the assignment from Jenkins to appellant by accepting pay-

ment of the $20 due on the April, 1906, installment. This contention cannot be sustained. The payment was accepted by a clerk in the office while ignorant of the facts. As soon as respondent's manager became aware of the real situation he notified respondent's attorney, who, in turn, and on the same day, notified appellant that the assignment was not and would not be recognized by respondent. The second payment was made in the same way a long time thereafter to another clerk, who did not know the facts. During all of this time, however, appellant had full knowledge of all the facts. He was forcibly prevented from obtaining possession of the premises and from having access to the house, and the respondent, through its attorney and agents, always denied appellant's alleged right to possession. The mere fact that the first payment was not promptly returned to appellant in view of the fact that respondent made no claim to it is not controlling. From all the acts of the parties there is no room for doubt that the receipt of these payments was not intended as a ratification of the assignment, but that the failure to promptly return them was entirely due to an oversight by respondent's manager.

The other assignments are practically covered by what has been said above, and need no special consideration.

We are clearly of the opinion that the judgment is in accordance with the great weight of authority, and it is therefore affirmed, respondents to recover costs.

McCARTY, C. J., and STRAUP, J., concur.