LIVINGSTON v. THORNLEY
LIVINGSTON v. HIRIGARAY

Nos. 4799, 4800. Decided September 4, 1929. (280 P. 1042.)

518

*King & King,* of Salt Lake City, for appellants.

*E. D. Sorenson* and *J. Louis Brown,* both of Salt Lake City, for respondent.

ELIAS HANSEN, J.

Both of these actions were brought to recover damages for the alleged trespass by sheep upon lands situated in Tooele county, Utah. Both cases were tried together in the district court of Tooele county, and both cases were argued and submitted together in this court. The complaint against W. J. Thornley alleges, in substance, that at all times alleged in the complaint plaintiff was in possession and entitled to the possession of section 16, township 1 S., range 10 W., sections 2 and 36 in township 2 S., range 11 W., and section 16, township 3 S., range 10 W., of the Salt Lake meridian; that at divers times between the 25th day of November, 1925, and the 1st day of April, 1927, the agents and em-

ployees of the defendant willfully, knowingly, and intentionally permitted approximately 3,000 head of sheep belonging to the defendant to trespass upon the lands described in the complaint; that defendant's sheep ate, browsed, injured, and destroyed the grass, roots, verdure, and pasturage growing upon said lands, to plaintiff's damage in the sum of $1,000. Plaintiff prayed judgment against the defendant for the sum of $1,000 and costs.

The complaint against Peter Hirigaray is similar to the complaint in the Thornley Case. The lands upon which it is alleged the sheep belonging to Peter Hirigaray trespassed are sections 2 and 36 in township 2 S., range 11 W., section 16, township 8 S., range 10 W., and section 32, township 2 S., range 10 W., Salt Lake meridian. It is alleged in plaintiff's complaint that approximately 3,000 sheep belonging to Peter Hirigaray trespassed upon the lands last above described at divers times between November 25, 1925, and February 5, 1926, to plaintiff's damage in the sum of $1,000, for which amount and costs plaintiff prays judgment against the defendant Peter Hirigaray. Each of the defendants answered, and denied generally the allegations of the complaint filed against him. Trial was had to the court sitting without a jury. Findings of fact and conclusions of law were made and entered by the trial court, and judgment was rendered in favor of the plaintiff and against the defendant in each case for the sum of $100 and costs. Each of the defendants appeals from the judgment rendered against him.

By the assignments of error each of the appellants seeks a reversal of the judgment rendered against him, because it is claimed that the evidence does not support the findings of fact. It is urged by the defendant W. J. Thornley (1) that there is no evidence to support the finding that at the time of the alleged trespass plaintiff was lawfully in possession of the land upon which it is claimed the Thornley sheep trespassed; (2) that there is no evidence to support

the finding that the servants and employees of W. J. Thornley knew, at the time of the alleged trespass, the location of the boundary lines of the land upon which the Thornley sheep are alleged to have trespassed; (3) that there is no evidence to support the finding that the sheep belonging to Thornley trespassed upon the land claimed by the plaintiff; and (4) that the evidence does not support the finding that plaintiff was damaged in the sum of $100 on account of any trespass of the sheep belonging to W. J. Thornley. Similar errors are assigned and urged by the defendant Peter Hirigaray in the action against him.

In the Thornley Case the court found:

"That during all the time on and between the 1st day of January, 1926, and the 1st day of April, 1926, the plaintiff was the owner or lessee and lawfully in possession of all that certain real estate situated in the county of Tooele, state of Utah, and described as follows: Sections 2 and 36, township 2 south, range 11 west, Salt Lake meridian; also section 32, township 2 south, range 10 west, Salt Lake meridian." In the Hirigaray Case the court found: "That during the time between the 25th day of November, 1925, and the 5th day of February, 1926, the plaintiff was and now is the owner or lessee and lawfully in possession of all that certain real estate situated in the county of Tooele, state of Utah, and described as follows: Section 2 and 36, township 2 south, range 11 west, Salt Lake meridian; also, section 32, township 2 south, range 10 west, of Salt Lake meridian."

All of the lands involved in these actions are commonly known as school sections. Under the provisions of section 6 of the Enabling Act sections numbered 2, 16, 32, and 36 in every township were granted to Utah for the support of common schools upon the admission of Utah into the Union. The management and control of school sections was placed with the state land commissioner in 1921, and remained with him until 1925, when it was again placed with the state land board. Laws Utah 1923, c. 23, as amended by Laws Utah 1925, c. 31. Under date of February 15, 1924, the state land commissioner of Utah executed a lease, whereby all of the lands involved in these actions, together with other

land, were leased to the plaintiff from January 1, 1924, to January 1, 1927, for an annual rental of 5½ cents per acre. On December 5, 1925, a land sale was held at Tooele, Tooele county, Utah. At the sale the plaintiff became the purchaser of section 36, township 2 S., range 11 W., and section 16, township 3 S., range 10 W., of the Salt Lake Meridian. Leland Livingston purchased section 2, township 2 S., range 11 W., of Salt Lake meridian. The Deseret Live Stock Company purchased section 32, township 2 S., range 10 W., of Salt Lake meridian. The purchasers paid the first payment on the land purchased, together with interest on the deferred payments to January 1, 1926. Receipts for the money paid were issued to the purchasers on the date of sale, as provided by Laws Utah 1925, c. 31, §§ 5584 and 5594. The lease which the plaintiff held from the state to the lands involved in these actions was canceled on the date of sales. The various certificates of sale were not issued to the purchasers until some months after the sales were made.

The plaintiff testified that he retained possession after the sales of the lands upon which it is claimed the sheep of the defendants trespassed. He further testified that he entered into an oral agreement with the Deseret Live Stock Company whereby the Deseret Live Stock Company should have the right to graze section 16, township 3 S.; range 10 W., of Salt Lake meridian, during the winter of 1925-1926, and that he (plaintiff) should have the right to graze section 32, township 2 S., range 10 W., of Salt Lake meridian, during the same period. The plaintiff further testified that he had an oral agreement with Leland Livingston whereby plaintiff was granted permission by Leland Livingston to graze section 2, township 2 S., range 10 W., of Salt Lake meridian; that Leland Livingston had a few sheep in plaintiff's herd; that the same arrangement had existed between Leland Livingston and the plaintiff ever since 1924.

It is the contention of the defendants that a purchaser of state lands has not such an interest in the lands purchased as will support an action for trespass until a certificate of

sale is issued to the purchaser. In support of such contention the following cases are cited: *Gordner* v. *Blades Lumber Co.*, 144 N. C. 110, 56 S. E. 695, where it is held that "proof of a grant from the state to the plaintiff made after the occurrence of the alleged acts of trespass, is insufficient to show constructive possession necessary to maintain an action for trespass." *McKeeby* v. *Webster*, 170 Pa. 624, 32 A. 1096, where it is held that "one who puts in a crop on leased premises on agreement with lessee, and who is not in possession of the leased lands, cannot maintain trespass for the cutting and carrying away of crops." *Evenal Estes* v. *Wilbur Cook*, 22 Pick. (Mass.) 295, where it is held that "An unrecorded deed to wild land is not of itself sufficient evidence of possession by the grantee to enable him to maintain trespass against a third person." *Decker* v. *Decker*, 17 Hun (N. Y.) 13, where it is held that, where two persons are tenants in common of a tract of land, and one of the owners is working the property on shares for a single crop, the one who is working the property cannot maintain an action for trespass against his cotenant because he enters upon the premises.

The cases cited and relied on by the appellants are readily distinguishable from the instant case. In this case it is made to appear that the plaintiff was in constructive possession, and entitled to possession, of the lands upon which it is claimed defendant's sheep trespassed at the time of the alleged trespass. Prior to December 5, 1925, plaintiff held a lease on the land from the state land commissioner. On or about December 5, 1925, plaintiff, the Deseret Live Stock Company, and Leland Livingston paid the first installment on the land purchased, together with interest on the total purchase price to January 1, 1926. A receipt for the money paid was issued to each purchaser. The presumption may well be indulged that, when the Legislature by its enactment, Laws Utah 1925, c. 31, § 5594, required that a purchaser of state land shall pay interest on deferred payments from and after the date of sale, it was the intention of the

Legislature that such purchaser should be entitled to possession of the lands purchased from and after the date of purchase. The mere fact that the state land board may delay in issuing a certificate of sale cannot well be said to affect the right of a purchaser to possession of the land purchased. Moreover, plaintiff testified that from January 1, 1924, up to the date of the trial, he had been in continuous possession of the land involved in these actions. There is no evidence, and no claim is made, that the state land board ever questioned the right of the purchasers to the immediate possession of the land purchased by them on or about December 5, 1925. It is a general rule of law that exclusive possession of real property is sufficient to entitle a person in possession to maintain an action for trespass against a stranger who is a mere tort-feasor. 28 Cyc. 1017; 26 R. C. L. 956, § 33, and cases there cited.

Appellants further contend that the lease which plaintiff secured from Leland Livingston was void, because it was oral and was for more than one year. The provisions of section 5813, Comp. Laws Utah 1917, are cited in support of such contention. The appellants are strangers to the lease between plaintiff and Leland Livingston. The lease was executed. Under such circumstances, the statute of frauds is not available to appellants. 27 C. J. 304, § 39; *Murray Hill Mining & Milling Co.* v. *Havenor et al.*, 24 Utah 73, 66 P. 762; *Cutright* v. *Union Savings Investment Co.*, 33 Utah 486, 94 P. 984, 14 Ann. Cas. 725. The evidence supports the finding that plaintiff was, at the time of the alleged trespass, lawfully in possession, and entitled to possession, of the lands involved in these actions.

Appellants further contend that the law of this state is and should be that the owner of sheep is not liable for damages caused by trespass of his sheep upon unimproved privately owned lands, which are surrounded by the public domain unless the owner of the trespassing sheep knows at

the time of the trespass the location of such privately owned lands and willfully drives the sheep thereon. In support of such contention the following cases are cited: *Buford* v. *Houtz,* 5 Utah 591, 18 P. 633; Id., 133 U. S. 320, 10 S. Ct. 305, 33 L. Ed. 618; *Jones* v. *Blythe,* 33 Utah 362, 93 P. 994; *Thomas* v. *Blythe,* 44 Utah 1, 137 P. 396; *Mower* v. *Olsen,* 49 Utah 373, 164 P. 482; *Hall* v. *Bartholomew,* 51 Utah 279, 169 P. 943; *Walker* v. *Bloomingcamp et al.,* 34 Or. 391, 43 P. 175, 56 P. 809. Most of the cases cited by appellants were recently reviewed by this court in the case of *Winters* v. *Turner* (Utah) 278 P. 816. The law announced in the case of *Winters* v. *Turner,* supra, is against the contention here made by appellants. We adhere to the law as announced in that case.

Moreover, there is evidence in the records before us which supports the finding that the defendants, their agents and employees, knew, at the time of the alleged trespass, the location of the lands claimed by the plaintiff. The evidence shows that the lands here involved are surveyed; that the corners of each section are marked with an iron post or peg, which stands 6 inches to 18 inches above the ground. On top of the iron post or peg is a brass cap. On the brass cap are markings indicating the corners of the sections that are at the iron post or peg. On the corners of the quarter sections are similar iron posts or pegs, which are smaller than the section corner posts or pegs. There is some conflict in the evidence as to the ease with which these posts can be found. Evidence offered in behalf of the plaintiff is to the effect that the posts or pegs can be readily located. The evidence offered in behalf of the defendants is to the effect that it is difficult to locate the posts or pegs. The evidence also shows that prior to 1924 the defendants, together with others, jointly leased the lands involved in these actions from the state of Utah. It further is made to appear that the defendant Thornley has for several winters been ranging his sheep on or near the lands in controversy, and that the defendant Hirigaray has also ranged his sheep in the

vicinity of the lands upon which the trial court found his sheep trespassed during the winter of 1925-1926. The testimony further shows that the defendant Thornley paid the plaintiff for grazing his sheep on the land here involved for the year 1925.

Both of the defendants were familiar with the territory where the lands involved in this action are situated. The plaintiff testified that before he leased the lands involved in these actions, and while the defendants held the lease on such lands, he was told by the herders in charge of the defendants' sheep to keep off these lands. The plaintiff also testified that after he purchased the lands here involved he informed the herders of the defendants' sheep to keep off the lands which he had so purchased. The defendants and the herders who were in charge of their sheep testified that they did not know, at the time of the alleged trespass, the location of the lands claimed by the plaintiff. These causes, however, are actions at law, and therefore it is not within the province of this court to weigh conflicting evidence. The evidence offered on behalf of the plaintiff is sufficient to support the trial court's findings that defendants' agents and employees knowingly, willfully, and intentionally permitted defendants' sheep to trespass upon the lands involved in these actions.

The appellants are not entitled to prevail in their claim that the evidence does not support the findings that their sheep trespassed upon the lands as found by the trial court.

The evidence shows without conflict that defendant's sheep ranged near plaintiff's land during the greater part of the winter 1925-1926. The plaintiff and the herder who was in charge of his sheep testified that they saw defendants' sheep on plaintiff's land. It further appears that plaintiff and defendants attempted to adjust the amount that defendants should pay on account of the trespass of their sheep upon plaintiff's land, but they were unable to reach an agreement.

The evidence offered on behalf of the plaintiff is sufficient to support the trial court's finding that he suffered damage in the sum of $100 in each action on account of the trespass. The plaintiff testified that he was unable to range his sheep upon the lands here involved during the winter of 1925-1926, because all of the forage had been eaten; that the land was so overgrazed that it would require several years before it would get back to its former condition. He placed a reasonable annual rental value of each section at $300. The defendants placed the annual rental value at much less.

Other errors are assigned, but they are not of sufficient merit to warrant further discussion.

The judgments are affirmed. Respondent is awarded his costs.

CHERRY, C. J., and EPHRAIM HANSON and FOLLAND, JJ., concur.

STRAUP, J. I concur in the affirmance of the judgments. While these cases were tried on the theory of a willful and an intentional trespass, as was the case of *Winters* v. *Turner* (Utah) 278 P. 817, yet, in view of the holding in the *Winters* v. *Turner* Case, to entitle the plaintiffs to prevail, it was not necessary to show a willful or an intentional trespass. The effect of the *Winters* v. *Turner* Case is that one grazing animals on the public domain is bound to restrain and keep them from straying or trespassing on lands owned or leased by another, including wild, uncultivated and uninclosed lands, wholly surrounded by lands of the public domain, except in counties where taxpayers at an election have declared in favor of allowing animals to run at large, and, unless he does so, he is liable for whatever damage such owner or lessee may have sustained, regardless of whether the straying or trespass of the animals was willful or intentional, or otherwise. For reasons stated in my dissenting opinion, I, in the *Winters* v. *Turner* Case, dissented from such holding.

I now yield to it, and, in view of such holding, I find it unnecessary to consider the question of sufficiency of the evidence to show a willful or intentional trespass.