## PAPADOPULOS v. DEFABRIZIO.

No. 6377.   Decided May 6, 1942.   (125 P. 2d 416.)

See 32 Am. Jur., 215; 36 C. J., Landlord and Tenant, sec. 690.

*C. E. Norton,* of Salt Lake City, for appellant.

*Richard L. Bird, Jr.,* and *Moyle, Richards & McKay,* all of Salt Lake City, for respondent.

LARSON, Justice.

Defendant appeals from a judgment of the District Court. Plaintiff, a sheep man, sued defendant, a farmer, for damages caused by the acts of defendant in plowing a certain section of land which resulted in the destruction of the feed

used in the grazing of plaintiff's sheep, and for the loss of about fifty lambs caused by the ewes having to go so far for water due to defendant's plowing that the newborn lambs were lost.

March 15, 1935, plaintiff leased from L. H. Gray, "agent for Western Land Association," a tract of land called "the Barney Canyon Ranch" in Salt Lake County, containing approximately seven sections of land, for a term of five years, for the grazing, lambing, and shearing of sheep. This lease was to terminate December 31, 1939. Plaintiff entered into possession and used the land in the sheep business during 1935, 1936, and 1937. April 6, 1938, defendant obtained a dry farm lease from the lessor of "approximately 300 acres of land situated in Sections 31 and 32, the Bingham & Garfield R. R. forming the East Boundary of the tract, all in T 2 S R 2 W,", being part of the land covered by the plaintiff's lease, for a term of six years. This controversy arose over Section 31.

During March and April, 1936, the county had become the owner of the property in question by virtue of auditor's tax deeds. May 4, 1938, defendant secured a lease from the county of 361.40 acres in Section 31, for a term of twelve months. On the same day plaintiff secured his lease from the county covering most of the sections in the "Barney Canyon Ranch" but this lease did not include any property in Section 31. This lease was for a term of thirteen months. The following year, May 4, 1939, plaintiff secured another lease from the county for a term of thirteen months. This lease included Section 31, which is the section in dispute. A letter from the Board of County Commissioners approved plaintiff's request for renewal of the lease of the Barney Canyon property from June 14, 1940 to June 15, 1941.

Section 31 is the only section in the "Barney Canyon Ranch," covered by plaintiff's lease, containing water and it has two watering spots, necessary for sheep grazing and lambing. This section is particularly desirable for lambing because there is considerable level ground and the sheep do

not have to leave the lambing ground for water. Plaintiff lambed his sheep on this section during the springs of 1935, 1936, 1937, 1939, and 1940. Defendant had plowed and planted the level places in the section in 1938 so plaintiff hired two extra herders in 1939 to prevent the sheep destroying the crop. Defendant again plowed in 1940 and had a standing crop in 1941 when the litigation started. Plaintiff claims this to be a trespass, destroying the grazing land in this section, and causing the loss of about fifty lambs by virtue of the fact that the lambs were born on bordering sections, which was rougher land, and the ewes had to leave their lambs and go to Section 31, to the watering spots, which resulted in the lambs being separated from the ewes.

This litigation involves the matter of which of the individuals claiming possession was entitled to possession of Section 31, and whether a trespass was committed, so causing reason for legal complaint. Originally plaintiff was the lessee of the seven sections forming the Barney Canyon Ranch" and L. H. Gray or the Western Land Association was the lessor. This lease was to be effective until December 31, 1939, unless terminated sooner by a sale of the property or due to the lessee's failure to make the payments when due, which times were specified to be after lambing and after shearing. This latter provision reads as follows: "Failing to make said payments, the lease stands terminated without further notice." The lessor under the first lease, Gray or the Western Land Association, received the last rental payment from plaintiff in the spring of 1938. So in 1939 and 1940 the plaintiff was released from his lease from his original lessor and was free to make a lease with the new owner of the land, the county.

Defendant does not benefit by his claim that Gray gave him a lease of part of the land in 1938, for the lease with the plaintiff was then in effect, and if so, only one lessee at a time is entitled to exclusive possession. If one individual has a valid lease covering the full possessory interest in the property then a second person cannot

be given possession by the owner. Appellant's theories are inconsistent. He contends that respondent is estopped to deny his former landlord's title yet he argues that he obtained a valid lease from the first lessor in 1938. This indicates that appellant believed the plaintiff's lease was terminated in the spring of 1938. If the lease to plaintiff was no longer in effect when defendant secured his first lease, how can he now claim that plaintiff is "estopped to deny the title of the first lessor and set up his lease from the county"?

On December 6, 1940, the Western Land Association acquired title to the property from Salt Lake County, but this deed was made subject to the existing leases made by the county, which included the lease to plaintiff.

At the date of the commencement of this controversy, plaintiff had a valid and uncancelled lease for the period of June, 1939, until June 15, 1941, from the county. The county was the owner of the property in question by virtue of the tax auditor's deeds issued in 1936. *Hanson* v. *Burris,* 86 Utah 424, 46 P. 2d 400; *Western Beverage Co. of Provo* v. *Hansen,* 98 Utah 332, 96 P. 2d 1105; *Richards* v. *State Tax Commission,* 92 Utah 503, 69 P. 2d 515. Defendant recognized the fact that the county had title to the land in dispute in 1938 by securing the lease of Section 31 in May, 1938. At the time of the occurrence of the trespass in question, plaintiff was in possession and en-entitled to exclusive possession of the "Barney Canyon Ranch" which included Section 31 with the exception of the S ½ of the S.E. ¼. At that time, during the spring of 1940, plaintiff had the possessory interest in the land, Section 31 except S ½ of S.E. ¼, and this interest was infringed when defendant entered and plowed up the grazing surface. Plaintiff is entitled to bring this action of trespass and secure an injunction against further trespasses by defendant. *Boulton* v. *Telfer,* 52 Idaho 185, 12 P. 2d 767, 83 A. L. R. 1341. Possession is the basis for an action in trespass. *Livingston* v. *Thornley,* 74 Utah 516,.

280 P. 1042. And for an injury to the possession of the tenant, the tenant may sue. *Ercanbrack* v. *Clark*, 79 Utah 233, 8 P. 2d 1093.

Is plaintiff estopped from asserting the title paramount to that of his original lessor? The lease under which he held the land under Gray and the Western Land Association contained this condition as to the rental that, "failing to make said payments, the lease stands terminated ■ without further notice." This clause was self-executing and forfeiture resulted without any further notice. Plaintiff had occupied the land in question under this lease during 1935, 1936, and 1937, and in 1938 he had leased the tract from the county. This was known to the former lessor, and plaintiff then refused to continue paying the rent under the terms of the original lease and retook possession a year later, in May, 1939, under his lease from the county. Having notified his former landlord and having refused to continue paying rent, and having been ousted from possession by a lessee of the owner of the land in 1938, plaintiff was thereafter able to lease the land from the new owner and assert his lease against his former lessor. The tenant here is not disputing the landlord's title as the date of the commencement of the first lease. The tenant may show that the landlord's title expired after the relation of landlord and tenant arose. *Renshaw* v. *Reynolds*, 317 Mo. 484, 297 S. W. 374; *Melchor* v. *Casey*, 173 Miss. 67, 161 So. 692. The theory underlying an estoppel is that the tenant cannot deny possession of the property to the landlord, having originally received possession from him. But here the landlord is not seeking possession and the second lessee, the defendant, is not in the position of the original lessor so far as possession or right to possession is concerned. As was said in *Jenkinson* v. *Winans*, 109 Mich. 524, 67 N. W. 549, 550:

"Though the tenant cannot show that the lessor had no title to the premises when the tenancy commenced, he may show that the lands have been sold at tax sales, and the landlord's title thereby extinguished. The estoppel extends only to the title which the landlord had at the time of leasing. If that title has been extinguished, it may be

shown; for then the landlord has no right to the possession. As was said in *McGuffie* v. *Carter*, 42 Mich. 497, 4 N. W. 211: 'The rule is familiar that both tenant and those in privity, either in blood or estate, are estopped from disputing the title of the landlord, or the title of anyone who succeeds to his rights, so long as they hold the possesson originally derived from him. But this principle does not forbid the tenant from showing that the landlord's title has expired, or has been extinguished by his own act or operation of law,'—citing *Lamson* v. *Clarkson*, 113 Mass. 348, [18 Am. Rep. 498]; *Fuller* v. *Sweet*, 30 Mich. 237, [18 Am. Rep. 122]; *Hilbourn* v. *Fogg*, 99 Mass. 11; *Despard* v. *Walbridge*, 15 N. Y. 374; *Mountnoy* v. *Collier*, 1 El. & Bl. 630, 16 Eng. Law & Eq. 232."

There was no unfairness in computing the plaintiff's damages in that there was ample evidence supporting the findings of the trial court and the measure used was reasonable in itself.

Judgment affirmed. Costs to respondent.

MOFFAT, C. J., and McDONOUGH, PRATT, and WOLFE, JJ., concur.