325 P.2d 260

MINERSVILLE LAND & LIVESTOCK COMPANY, Plaintiff and Respondent,

v.

Earl P. STATEN, Administrator of the Estate of William Story, Jr., deceased, et al., Defendants and Appellants.

No. 8662.

Supreme Court of Utah.

May 14, 1958.

John S. Boyden, Allen H. Tibbals, Salt Lake City, for appellants.

C. M. Gilmour, Clinton D. Vernon, Salt Lake City, for respondent.

McDONOUGH, Chief Justice.

The first question here confronted, the answer to which we deem decisive of this appeal, may be stated as follows: Where lands were granted to the state by the federal government for use of the State Agricultural College and subject to the restriction that all proceeds from the sale of said lands are to constitute a permanent fund to be safely invested and held by the state, the income thereof to be used exclusively for the purposes of such college; and where certain of said lands were sold in the manner provided by law to a purchaser who thereafter paid to the state the full purchase price thereof, and was therefore entitled to a patent from the state, may a third party by holding the land adversely to the successors in interest of the purchaser for the requisite period subsequent to the date of final payment, but before issuance of

patent, quiet title thereto as against such successors in interest of the purchaser?

The facts out of which this controversy arises are these: The state of Utah was granted by law the right to select certain federal lands as grants in aid of the Agricultural College and to sell the land so acquired. One Joseph Henshaw signed an agreement to purchase selected lands on the 24th of November, 1902. The lands he agreed to buy are the ones here in controversy. After approval by the United States Land Office the state on January 1, 1905, issued to Henshaw certificate of sale No. 8515.

Henshaw died in 1905 but prior to his death he had assigned and transferred the certificate of sale interest to one A. B. Lewis. In 1910, Lewis assigned and transferred the certificate to Lewisiana Land Company, which company assigned and transferred the certificate on August 21, 1914, to William Story, Jr., and Frederick Steigmeyer, a co-partnership. Neither of these assignments were recorded in the Office of the County Recorder of Beaver County, where the land is located. Appellants are the assignees and successors in interest of the co-partnership. On March 30, 1914, the state of Utah received the final payments constituting payment in full to the state of Utah of the sum due on the purchase of the land under the certificate of sale. No patent to said lands has ever been issued by the state of Utah.

One Gus S. Holmes, having acquired a money judgment in Salt Lake County against Lewis, procured to be issued a writ of execution on March 4, 1914. This, it will be noted, was several years after Lewis had executed and delivered an assignment and transfer of his interest in the land in question. As noted above such assignment and transfer was not recorded in Beaver County. Under the writ of execution the sheriff of Beaver County sold at Sheriff's Sale the interest of Lewis in the real estate described in the Land Board certificate. The sheriff's certificate of sale was issued to Holmes on March 28, 1914. No redemption from such execution sale was ever made. The sheriff's certificate of sale of real estate on execution was placed on record in the office of the Beaver County Recorder on about the date of its execution. From 1918 to 1940 the lands were, pursuant to statute, assessed in the name of the record owner, namely Gus S. Holmes. Taxes assessed against the lands were not paid and they were sold to Beaver County for nonpayment of taxes on January 2, 1937. Thereafter Beaver County foreclosed its tax lien, and upon entry of a default judgment sheriff's deed on foreclosure sale was issued to Beaver County in 1941.

Plaintiff purchased said property from Beaver County on contract approved June 5, 1941. Final payment was made on December 11, 1945. Ever since June 5, 1941, the plaintiff has been in exclusive, open,

continuous, uninterrupted and adverse possession and occupancy of all of the said real property under claim of right and title thereto, and has paid all the taxes regularly levied and assessed thereon according to law. The defendants or their predecessors in title have never at any time been seized or in possession of any part of lands in controversy herein, nor received any part of the rents, issues or profits from said lands.

The lower court held that by reason of the purchase from Beaver County and by reason of plaintiff's adverse possession and occupancy of the land and payment of all taxes regularly levied and assessed thereon for more than seven years subsequent to the final payment to the state of Utah on the contract to purchase from the state and prior to the commencement of this action, plaintiff is entitled to a decree quieting its title to the lands in question as against each and all of the defendants. A decree was entered accordingly and the state of Utah was directed to issue patent to the said lands to plaintiff. It should be mentioned at this point that the state of Utah was joined as a party defendant in the quiet title action of the plaintiff, and the Attorney General on behalf of the state of Utah answered that on March 30, 1914, the state of Utah received final payment for the purchase of the land, and therefore the state of Utah disclaimed any right, title or interest therein and stated that it stands ready, willing and able to issue a patent to such lands in accordance with the judgment of the court.

In answering in the negative the question posed at the outset of this opinion, the position of appellant may be stated as follows: The State Agricultural School lands granted to the state by the federal government are held by the state in trust for the people to be disposed of as may be provided by law and relinquishment of title by the state otherwise than by way of a sale and issuance of patent to a person other than a purchaser, his assignee or successor in interest, is unconstitutional and void and in contravention of the enabling act, the Utah State Constitution and the statutes pertaining to the administration, management and sale of state lands. Counsel refers in support of his contention to the provisions of the enabling act, approved July 16, 1894, 28 Stat. 107, which provides that the grant here involved is for the use of an agricultural college and subject to the restriction that all proceeds from the sale of said lands are to constitute a permanent fund to be safely invested and held by the state with the income thereof to be used exclusively for the purposes of such college. Likewise invoked are the provisions of Sections 3 to 7 inclusive of Article X, Sec. 3 of Article XIII and Sec. 1 of Article XX of the Constitution of Utah, pursuant to the provisions of which all lands granted to the state by congress are declared to be held in trust

for the people to be disposed of as may be provided by law for the respective purposes for which they have been granted. Counsel for respondent has no quarrel with the contention that the state may not dispose of lands which were the subject of the recited grant in violation of the trust thereby imposed, nor with the proposition that a possessor may not hold adversely to the state with respect to such lands. Respondent's contention is that under the facts of this case no such issue is confronted.

In support of their position appellants rely heavily upon certain Utah cases. Among them is the case of Van Wagoner v. Whitmore, 58 Utah 418, 199 P. 670, which it is contended is determinative of the present case. We are not in accord with this contention.

In the Van Wagoner case, one Whitmore had been in open, notorious occupancy and possession of the land in question, which lands were subject to the same limitations on alienability by the state as that here involved, since long prior to the date on which the state of Utah was admitted to the Union. He had enclosed the lands with a fence and made other improvements. At the time of the admission of the state of Utah to the Union it was provided by law that one who was in possession of land then given to the state by the Federal Government as grants in aid of schools could make application and exercise preference rights for acquisition of title. Whitmore did not pursue this remedy. In 1912 one Van Wagoner entered into an agreement to purchase said lands from the state of Utah and was issued a certificate of sale. Patent was issued to him in June, 1916. Thereafter he commenced an action in ejectment against Whitmore, who by answer claimed title to the lands by adverse possession. It is quite evident from the statement of the facts that the adverse possession of Whitmore as against Van Wagoner did not commence until after the certificate of sale was issued in 1912. The suit in ejectment was commenced early in 1918. Consequently the requisite period of time, seven years, had not expired at the time of the commencement of the action. The question involved, therefore, was whether or not Whitmore could hold adversely to the state of Utah. And that is the sole question discussed in the opinion of the court on that particular phase of the case. The interest of the state in the land was asserted by a complaint in intervention by the state. Its contention and that of the plaintiff was upheld by this court, such contention being that the predecessor section to Section 78–12–2, U.C.A.1953 [1] could not

---

1. "Actions by the state.—The state will not sue any person for or in respect to any real property, or the issues or profits thereof, by reason of the right or title of the state to the same, unless:

"(1) Such right or title shall have accrued within seven years before any action or other proceeding for the same shall be commenced; or,

336

be applied against the state insofar as the class of lands involved was concerned. It was not a holding, as contended by appellant, to the effect that the statute of limitations could not run against a purchaser from the state until after the issuance of patent.

We have examined the other Utah cases cited by the appellants in support of their position.[2] It would unduly extend this opinion to enter into a discussion of them. Suffice it to say that none of the cases involve a situation such as we here confront: that during all of the time while the plaintiff was in possession of the premises in question and for many years prior thereto the state of Utah held the bare legal title. Final payment of the amount due the state had been made more than a quarter of a century prior to plaintiff's entry. During all of that time the defendants or their predecessors in interest were entitled to the full use and enjoyment of the land. The State of Utah claims no interest in the land. Plaintiff asserts no interest adverse to the State. No provision of the Enabling Act or of the Constitution which provide that the *proceeds from the sale of* such lands shall constitute a trust fund is in any manner impinged—even by indirection—by upholding plaintiff's title. It is difficult to see how under such circumstances the defendants could claim that their failure to demand the issuance of patent or the state's delay in issuing it could defeat plaintiff's claim to title by adverse possession by the bald assertion that such possession was adverse to the state. The trial court did not err in rejecting such contention.

The judgment below is therefore affirmed. Costs to respondent.

CROCKETT, WADE, WORTHEN, and HENRIOD, JJ., concur.

"(2) The state or those from whom it claims shall have received the rents and profits of such real property, or some part thereof, within seven years."

2. Steele v. Boley, 7 Utah 64; Toltec Ranch v. Babcock, 24 Utah 183; Young v. Corless, 56 Utah 564, 191 P. 647; Utah Copper Co. v. Eckman, 47 Utah 165, 152 P. 178; Livingston v. Thornley, 74 Utah 516, 280 P. 1042.